## SUSAN McMAHAN *vs.* PATRICK BOWE.

A deed by a person disseised is valid against every one but the disseisor and his privies.

Under the Gen. Sts. *c.* 134, §§ 13–19, the damages that a demandant may recover in a writ of entry are not to be computed upon the value of the demanded land for a specific purpose for which the demandant might have used it had he not been disseised.

WRIT OF ENTRY to recover a strip of land on I Street, South Boston, the strip being three feet in breadth on the street, and extending back from the street in length forty-five feet. Writ dated June 19, 1871. Plea *nul disseisin.*

At the trial in the Superior Court, before *Pitman*, J., it appeared that the demandant and tenant owned adjoining estates upon I Street, the northerly estate belonging to the tenant. Formerly one Whittemore owned land on I Street which included the land of the tenant, that of the demandant, and also the land upon the south of the demandant. This land was conveyed by Whittemore in lots, the lot of the demandant, which was conveyed by Whittemore to one Atkins, October 16, 1845, being the one last conveyed. The demandant was the widow of William McMahan, who died December, 1862, and who purchased the lot conveyed by Whittemore to Atkins, August 22, 1854. The demandant claimed title to this lot " by a recorded deed of the same from John McMahan, of Ireland, as heir of William McMahan,'

dated October 10, 1864. In the deeds, through which the de-
mandant claimed, her lot was bounded " westerly by I Street
fifty-two feet; southerly by land now or late of Watts, forty-five
feet; easterly by land now or late of Eaton fifty-two feet; and
northerly by land now or late of Jeremiah Brown forty-five feet."
It was conceded that the land described in these deeds as "land
now or late of Jeremiah Brown " was owned by the tenant, and
this land was distant fifty-five instead of fifty-two feet from the
land described in the deed as "land now or late of Watts." The
strip of three feet in width adjoining the "land now or late of
Jeremiah Brown " was the strip in controversy.

The demandant introduced evidence that the strip was in the
possession of her husband till 1858, when it was built upon by
John Lyons, the then owner of the adjoining estate, but was not
conveyed by the deed of Lyons's estate made to one Simmons in
1858, and that the structures were occupied by the owners of this
adjoining estate till 1869, when they were removed, and that then
the demandant was in possession. There was no evidence that
John McMahan, the demandant's grantor, who lived in Ireland,
ever had an actual possession of the demanded premises.

The tenant introduced a deed of the adjoining estate from one
Mary Bowe to himself dated January 16, 1871, which recited a
deed from one Hyland to Mary Bowe of the same premises dated
October 7, 1865. The side strip in question was not included in
any of the conveyances of the tenant's lot. The tenant offered
evidence of adverse possession in himself of the strip since the
date of his deed, and a witness testified, against the demandant's
objection, that since 1836 the strip had been within the inclosure
of the tenant's lot; that buildings were erected on it some twen-
ty-three years before by the then owner of the tenant's lot, and
that from 1836 to the time of bringing the action, it had been
occupied by the several owners of the tenant's lot in the order
of their conveyances, and at no time by the demandant or her
grantors. It did not appear that there was any privity of estate
between the tenant and the prior occupants except as above
stated, nor was there evidence of a paper title in any one other
than the demandant. The tenant, at the trial, denied the de-

mandant's seisin and claimed title in himself by adverse possession. The demandant asked the presiding judge to rule:

" 1. The demandant's recorded deed vests in her a *de facto* seisin of the premises therein conveyed, and gives the demandant a *primâ facie* title. And seisin once proved is presumed to continue till shown to be changed.

" 2. The demandant proving her seisin, the burden of proof is on the tenant to show that he has the right of entry.

" 3. The demandant, having proved her seisin under her deed, must recover unless the tenant shows a better title.

" 4. The tenant in support of his claim shows no title under his deed. It forms no part of the lot conveyed. He shows no title by sufficiently long adverse possession in himself, and he cannot tack to his own possession the disseisin, if any, of his grantor, if the *locus* is not conveyed to him by the grantor's deed. The demandant is therefore entitled to a verdict for the side strip.

" 5. The tenant claiming title can only show a disseisin of the demandant by showing adverse possession in himself or those in privity with him."

The presiding judge declined so to rule, but did instruct the jury as follows so far as related to the first count and to the matters embraced in the above prayers.

" The plea of *nul disseisin* puts in issue the legal title to the land, or in other words, the seisin on which the demandant has counted, and the lawfulness of the tenant's entry. It is apparent now, that upon a proper construction of the deeds the demandant has the better paper title. It appears that the grantees on each side of her lot get their requisite quantity of land by prior deeds, and that what remains, including this passage-way, is by operation of law embraced in the subsequent deed to the ancestors or parties under whom the demandant claims. But this alone will not entitle her to recover in this action. It is a principle of law that a party who is disseised, who is held out of possession, cannot convey a title. Therefore, if this John McMahan never had any seisin of this strip of land, if he was held out of possession and never entered upon it, then he had no title to convey to the

demandant.  Sometimes a party may be seised of land without going upon it.  Ordinarily a person buying a piece of land, taking a deed and putting it on record, has not only a conveyance but also seisin of the estate.  The seisin is said to follow the title.  But if it happens that somebody else has actual possession of the land and claims adversely, — claims that you have no right there, — you must do something to vindicate your right before you can be seised.  So in this case, if Mr. McMahan when he was actually disseised, that is to say, while somebody else was in possession claiming to hold against him, made a deed to the demandant, he could not, as a matter of law, convey this controverted strip.  It was his duty to enter upon the land if he chose to enforce his rights, and make his conveyance thereafter; or to bring suit to recover possession."

After referring to the evidence the court added : " If there was a seisin in John McMahan, then he had a right to convey the title, and the demandant would take his title.  It seems to me that as you find this, your verdict must be for tenant or demandant.  The tenant, to be sure, claims that he has acquired title by adverse occupation, but there is this principle of law in the way of his title under this claim.  Successive disseisins do not aid one another.  Nothing being sold to the tenant except what was included in the boundaries stated in his deed, he has no right by an entry under the deed to the excess which was in the possession of his grantor.  In regard to the burden of proof, the general burden of proof is on the demandant.  It is for her to make out satisfactorily her seisin.  Her seisin would, ordinarily, be made out by producing her record title; but if the tenant satisfies you that there has been adverse occupation so that she has had no actual possession, then the *primâ facie* case disappears.  It will be for you to put the burden of proof, so far as adverse occupation is concerned, upon the tenant.  But upon the whole case the demandant is to prove that she has seisin of the premises as well as rightful title."

The jury returned a verdict for the tenant, and the demandant alleged exceptions.

*I. Knowles, Jr.*, for the demandant.

*R. M. Morse, Jr.*, for the tenant.

MORTON, J. This is a writ of entry. The tenant at the trial denied the seisin of the demandant, and claimed title in himself by adverse possession. The rulings of the court as to his claim of adverse possession were sufficiently favorable to the demandant, and were not excepted to by her. The only question before us is as to the correctness of the rulings upon the issue whether the demandant had proved her seisin.

It appeared that the *locus* was conveyed to the demandant's husband in 1854; that he died in 1862, and that in 1864 his heir at law conveyed it to the demandant. There was evidence tending to show that the husband of the demandant was disseised at the time of his death, and that his heir at law never entered on the demanded premises, but was disseised when he made his deed to the demandant. It also appeared that the tenant claimed under a deed to him, dated in 1871, which did not include the premises in question, and that he has been in adverse possession of them since his deed. The demandant claimed, and it was held by the court, that the tenant could not tack to his own possession the disseisin, if any, of his grantor, there being no privity of estate between them as to the *locus*. In this aspect of the case, she asked the court to rule that the tenant could only defeat the demandant's title by showing that, at the date of her deed, her grantor was disseised by the tenant himself or by some one under whom he claimed title. The presiding judge refused this ruling, but instructed the jury, in substance, that if her grantor was disseised by any one when he made his deed, the demandant could not recover. To test the correctness of this ruling, we must assume that the disseisin of the tenant commenced at the date of his deed, which was after the deed to the demandant.

The rule that a disseisee cannot convey land was founded partly upon the peculiar nature of livery of seisin under the ancient common law, and partly upon considerations of public policy. Blackstone states the reason of the rule to be "lest pretended titles might be granted to great men, whereby justice might be trodden down, and the weak oppressed." 2 Bl. Com. 290. The early authorities in this Commonwealth generally

state it to be, lest pretended titles be purchased and lawsuits be promoted. 4 Dane Ab. 8. *Ward* v. *Bartholomew*, 6 Pick. 409. The reasons have in a great measure ceased to exist, and the tendency of the later decisions is to modify the strict rule as anciently held. *Sparhawk* v. *Bagg*, 16 Gray, 583.

The authorities in this state, cited by the tenant, show the rule to be established that a deed of a disseisee conveys no title which can be enforced in the name of the grantee, against the disseisor or his privies, but they go no further. It is now held that such deed is good against the grantor, and that it entitles the grantee to an action to recover the land, in the name of the grantor but to his own use, even against the disseisor. *Farnum* v. *Peterson*, 111 Mass. 148. *Wade* v. *Lindsey*, 6 Met. 407. *Cleaveland* v. *Flagg*, 4 Cush. 76. In the case last cited, the tenant held under a deed given to him when his grantor was disseised; but it was held that as he had entered and obtained possession under his deed, he could avail himself of his title in defence to a writ of entry, to avoid circuity of action.

In *University of Vermont* v. *Joslyn*, 21 Vt. 52, it was held that a deed by a disseisee was invalid only as to the person holding adversely at the time of the deed, or those who subsequently came in under him, but as to all other persons valid, and passed the title of the grantor. The same rule was held in *Livingston* v. *Proseus*, 2 Hill, (N. Y.) 526.

It seems to us that the doctrine held in these cases is founded upon reason. If a person who is disseised conveys land, and the disseisor abandons the possession, and the grantee enters and occupies it, we are of opinion that he acquires an indefeasible title. He thus acquires an actual seisin under a title which his grantor is estopped by his deed to deny, and a stranger who subsequently disseises him cannot set up the invalidity of his deed.

If the disseisor abandons his possession, and the grantee does not enter into actual occupation, but the land is vacant, we see no reason why the same result should not follow. Livery of seisin, necessary at common law, is not required under our laws. Delivery of the deed is delivery of seisin unless the land is adversely occupied at the time. If it is, and the disseisor abandons

his possession, we think it enures to the benefit of the grantee, and gives him a seisin, so that he has a title which is valid against a stranger who subsequently disseises him. This result is according to justice and the real rights of the parties, and it is no hardship upon any one to permit the grantee to bring the suit in his own name instead of resorting to the fiction of a suit by his grantor. It follows, therefore, in the case at bar, that the instructions asked for should have been given.

*Exceptions sustained.*

Another trial was had in the Superior Court, before *Bacon,* J., when the demandant's title was admitted, and the only issue made was as to the amount of damages she was entitled to recover.

The demandant introduced evidence that a building was erected in 1854, by her husband, upon his lot, extending from its southerly boundary, northerly toward the land of the tenant fifty-one feet and eight inches ; that the side strip, the title to which was in controversy at the former trial, was reserved for and used as a passage-way between the street and the back yard of the estate till the year 1859, when her husband was disseised by one of the tenant's grantors, which disseisin was continued by the tenant and his grantors till the time of the trial; that there was no other means of communication with the rear of the estate except through the house, which contained eleven tenements and forty-four rooms, and yielded a rental, prior to the disseisin of the rear strip, of $1080 a year, and subsequently of $960.

The demandant introduced several experts, and the following questions were asked them : " What would be a fair annual rental of this passage-way, to be used in connection with the estate to which it belongs, situated as this estate is ? " " What would be the fair annual value of such a passage-way as this to the owner of an estate situated as this estate is ? " These questions were objected to and excluded by the presiding judge, on the ground that " The question is simply what is the value of this strip, situated just as it was, without any reference to any particular or specific use to which it may or may not be put." They were then asked.

McMahan *v.* Bowe.

"With that building of forty-four rooms, and rental of $1080, what would that strip of land be worth to that estate, taking into consideration all the surrounding circumstances? What would it be worth a year for any purpose for which it is capable?" These questions were excluded by the presiding judge, who ruled that " the question is, what it is worth generally to that estate or to anybody else."

The tenant introduced the testimony of experts, and, among others, of an assessor of the city of Boston, who testified that the yearly value of such a strip would be ten per cent. of the price of the land. On cross-examination he was asked, " If you owned an estate worth $6000, and you could not enjoy it, and could not get to it except by means of a passage-way such as this, what would you pay for that passage-way rather than lose the enjoyment of your estate?" The question was objected to, and ruled out.

At the close of the evidence, in submitting the case to the jury, the demandant's counsel proceeded to address the jury, among other things, upon the use and value of this strip as a passage-way to the premises of which it formed a part, but the court declined to allow counsel to discuss that question.

The demandant asked the court to rule that the annual value of the premises to which the demandant would be entitled would be what the strip would be yearly worth to the estate of which it formed a part. " If, upon the evidence, it appears that it was laid out or used as a passage-way to the estate to which it belongs prior to the disseisin by the tenant and his grantors, the damages would be what would be a fair, clear, annual rental of such a passage-way to owners of estates similar to this." The court declined so to rule, but ruled : " The annual value is not what it is worth either to the tenant or the demandant. It has no tendency to prove the market value, nor is it material that it may be especially valuable to either by reason of any especial or particular use to which it has been or may be applied. The annual value is what it is fairly and reasonably worth, under all the surrounding circumstances, in the market, for any purpose, considering all its present and future capabilities for use."

The jury assessed damages in the sum of $125 ; and the demandant alleged exceptions, which were argued in November, 1875, by the same counsel.

MORTON, J.  This is a writ of entry.  At the trial the tenant admitted the title of the demandant, and the only question was as to the damages she was entitled to recover.  The demandant contended that the premises might have been used by her as a passage-way to her adjoining estate in the rear, and that the measure of damage was what they would have been worth to her as such passage-way.  But the court ruled that the demandant was entitled to recover the clear annual value of the premises ; that the annual value is not what it is worth to the demandant or to the tenant, but " what it is fairly and reasonably worth, under all the surrounding circumstances, in the market, for any purpose, considering all its present and future capabilities for use."

The statute, which provides that the demandant in a writ of entry should recover damages for the rents and profits of the premises, also provides that " the rents and profits for which the tenant is liable shall be the clear annual value of the premises for the time during which he was in possession thereof."  Gen. Sts. *c.* 134, § 15.

The statute of which this is a part provides a mode for settling in one suit both the demandant's title to the land and his claim for damages and mesne profits.  Its object is to adjust the rights of both parties upon equitable principles.  It establishes, as the measure of the demandant's damages, " the clear annual value of the premises," and any damages for waste, and permits the tenant to set off against this, taxes and expenses incurred by him in cultivating the land or collecting the rents and profits, and the value of improvements upon the premises made by him or his grantor. Gen. Sts. *c.* 134, §§ 13–19.  *Raymond* v. *Andrews*, 6 Cush. 265.

The rule, thus established, that the rents and profits which the demandant may recover shall be the clear annual value of the premises, excludes the idea that he can recover consequential damages for alleged injury to his other land adjoining the premises.

In cases where land is taken for a highway or railroad, it is held that the measure of damages is the fair value of the land taken in the market, and not its value for any specific use to which the owner intends to devote it. *Pinkham* v. *Chelmsford*, 109 Mass. 225. *First Parish in Woburn* v. *Middlesex*, 7 Gray, 106. The same principle applies in this case. The clear annual value which the demandant was entitled to recover is measured by the fair rentable value of the premises, for any purpose to which it might be applied; and she cannot show that if she had been in possession she might have used them in connection with her adjoining land, so that they would have been of greater value to her. We are therefore of opinion that the rulings of the Superior Court were correct. *Marsh* v. *Hammond*, 103 Mass. 146.

These considerations dispose of all the exceptions taken by the demandant. All the questions, to the exclusion of which she excepted, were properly excluded, because their purpose was to show the special and peculiar value of the premises to her in connection with the adjoining estate. *Exceptions overruled*