## TOOTLE vs McCLELLAN.

### Opinion rendered June 14, 1907.

### (103 S. W. Rep. 766).

1. *Judgment by Default—Finality.*

    When a judgment by default is properly entered it is conclusive and binding upon the parties, if unappealed.

2. *Same—Nonresident of State.*

    The federal constitution by the full faith and credit clause provides that the courts of one state are not exempt from ignoring a judgment rendered by another state against a non-resident of that state when the court which rendered the judgment had no jurisdiction of the person or the matter on trial. The judgment may be rebutted by proof if nothing further is shown than that the court had jurisdiction.

3. *Same—Jurisdiction of Court.*

    When the court of one state had obtained personal service on defendant it could itself determine whether it had jurisdiction by its construction of the law or by the facts and when it had done so, its decision was res adjudicata and within the full faith and credit clause of the federal Constitution, in a proceeding where matter was presented directly for its consideration by defendant making motion to quash the service.

4. *Federal Constitution—In force in Indian Territory.*

    By the act of May 2, 1890, c. 182, 26 Stat. 96 the Constitution of the United States was made to apply to the Indian Territory just as it applied to the states; therefore the full faith and credit clause may be applied in courts of the Indian Territory.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Gill, October 31, 1903.

Action by Thomas E. Tootle against Charles M. McClellan. Plaintiff appeals from a judgment for defendant. Reversed and remanded.

This is an action founded on a judgment obtained by
Tootle against McClellan in the Circuit Court of Anderson
county, Mo.  It appears that prior to the institution of the
suit in Missouri, wherein the judgment on which this suit is
founded was obtained, Tootle a resident of Missouri, had brought
suit against McClellan, a resident of the Indian Territory,
in the United States Court at Vinita, upon the same debt which
was afterwards merged in the judgment in Missouri.  Pending
that suit in the Indian Territory, the plaintiff, Tootle, caused
notice to be served upon the defendant that he would, on a
certain day, take depositions in the case in St. Joseph, Anderson
county, Mo.  On the day specified the defendant went to St.
Joseph for the purpose of being present at the taking of the
depositions, and on the following day Tootle filed suit against
McClellan in the Circuit Court of Anderson county, Mo., and
obtained personal service upon him.  The suit in the Indian
Territory was immediately dismissed.  The defendant appeared
specially in the Missouri Court, and filed a motion to quash
the service of the summons, on the ground that he had been
fraudulently induced to enter its jurisdiction for the purpose
of getting service on him, and claiming his exemption from
service while attending the taking of depositions in a suit to
which he was a party.  The record discloses that this issue
was squarely presented to the Missouri court, which decided
that the service was legal and valid, and entered the following
order in the case, to wit:  "Now comes the plaintiff in the
above-entitled cause, and the defendant, appearing specially
and for the purpose only of his motion to quash the writ of
summons in said cause, and set aside the return of the sheriff
thereon heretofore filed in this case, and said motion being
now here taken up and the affidavits and other testimony of
both parties presented upon said motion being heard by the
court, and also the argument of counsel, upon consideration

of the same, said motion is by the court overruled." No further appearance was made by the defendant, and on October 17, 1898, judgment was rendered by default against the defendant in the sum of $15,590.12. No appeal was taken from this judgment. On November 21, 1900, Tootle brought suit against McClellan upon this judgment in the United States Court at Vinita. The defendant answered, alleging that the judgment of the Missouri court was void and of no effect because there was no valid service upon him, and because the service was void for the reason that he was fraudulently induced to go to Missouri by the notice to take depositions for the purpose of securing service upon him.' The issues were tried to a jury as to the validity of the service, both as to the alleged fraudulent conduct of the plaintiff in inducing the defendant to enter the jurisdiction of the Missouri court and on account of the exemption from service while attending the taking of the depositions. At the trial the plaintiff offered the judgment of the Missouri courts, which contains the usual recitals that the defendant had been legally served, etc., and had made default; and further introduced the motion to quash filed in the Missouri court, together with the evidence taken in support thereof, and the ruling of the Missouri court thereon. Verdict and judgment for defendant, from which this appeal is regularly taken.

*E. S. Bessey*, for appellant.

*James S. Davenport*, for appellee.

CLAYTON, J. (after stating the facts). The only question to be considered in this case is: Can the judgment of the courts of a sister state be impeached in the courts of another state for want of jurisdiction, where personal service has been had upon the defendant in the jurisdiction of such court, on the ground that the service was void because the party served was within such jurisdiction for the purpose of being present at the taking of depositions in a case where he was a party,

or because he was fraudulently induced to enter the jurisdiction for the purpose of obtaining service on him, when that question has been decided by the court rendering the judgment, upon a motion to quash the service, in favor of the jurisdiction? There can be no doubt as to the correctness of the proposition urged by the appellee that a person who is attending the taking of depositions, or any other judicial proceedings, is exempt from the service of process therein during such attendance, and for a reasonable time while going to and returning therefrom (with the exception of certain acts committed in the foreign jurisdiction at the time); and it is equally certain that, if a person is induced to enter the jurisdiction by fraudulent representations for the purpose of securing service upon him, he is likewise exempt.    Brown on Jurisdiction, §§42, 43, Alderson Judicial Writs and Process, §§ 121, 126; Peel vs January, 35 Ark. 331, 37 Am. Rep. 27.    The federal courts and most of the state courts permit the exemption as to judicial proceedings to extend to all persons, whether witnesses, parties, or attorneys, and whether actually under process or appearing voluntarily. A few states, however, notably Missouri and Rhode Island, make a distinction between persons actually under process and those attending voluntarily and between parties and witnesses.    Baisley vs Baisley, 113 Mo. 544, 21 S. W. 29, 35 Am. St. Rep. 726; Baldwin vs Baldwin, 16 R. I. 304, 15 Atl. 83, 27 Am. St. Rep. 741; Capwell vs Sipe, 23 Atl. 14, 17 R. I. 475, 33 Am. St. Rep. 890.    In the case at bar, the defendant, McClellan, who was a party to the suit-in which the depositions were to be taken, was not a witness, but was in attendance voluntarily, simply for the purpose of being present at the taking of the depositions.    He appeared specially in the Missouri court, and moved to quash the summons on the grounds stated. The court, after a full hearing, of the matter, overruled the motion to quash, and upon failure to answer judgment by default was rendered against him.    A judgment by default,

unappealed from, when properly entered, is conclusive and binding between the parties as to the matters litigated. Black on Judgments, §87. It is unquestionably the law that the full faith and credit clause of the federal Constitution does not extend so far as to preclude the courts of one state from ignoring the judgments of the courts of a sister state against a nonresident of such state, when the court rendering the judgment had no jurisdiction of the subject-matter, or the person; and, if nothing further is shown than the recital in the record that the court had jurisdiction, it may be rebutted by proof that the court in fact did not have such jurisdiction. Pennoyer vs Neff, 95 U. S. 714, 24 L. Ed. 565; Black on Judgt. §§900, 901; Story, Const. §1313.

But a different question is presented where, as in this case, personal service was in fact had upon the defendant within the jurisdiction, and the party served claimed the service unlawful by reason of the existence of certain facts, or by reason of a certain law, and upon hearing that fact was found not to exist or the law not to be applicable, and the court held that it had jurisdiction. The court below charged the jury as follows: "The court instructs the jury that a suitor is privileged from the service of the several processes while going to and attending trial of the cause in which he is interested in a foreign jurisdiction, and that summons served upon him while so attending in such foreign jurisdiction would be a void service, and not sufficient service upon which to found a judgment." The plaintiff excepted to this instruction, and asked the court to instruct the jury that the defendant was estopped from setting up any matter in defense, whether relating to irregular service or otherwise, that was actually determined in the proceedings which led up to the judgment; and, to return a verdict in favor of the plaintiff. While the instruction of the court to the jury would have been proper (and we hold it to be the law of this jurisdiction) if a person were defending a suit in

this jurisdiction on the ground that service was had on him while in this jurisdiction as a witness or party in a judicial proceeding, yet we think that the Missouri court, having obtained personal service of the defendant within its jurisdiction, had the right to determine for itself, whether by reason of the facts, or from its construction of the law, it had jurisdiction of the defendant; and, having done so in a proceeding where the matter was squarely presented for its consideration, we think it a judicial determination which is res adjudicata, and within the meaning of the full faith and credit clause of the Constitution of the United States.

The defendant, in his brief, relies very strongly upon the decision of the Supreme Court of Nebraska in the case of Jaster vs Currie, 94, N. W. 995, 69 Neb. 4; but since the briefs have been filed in this case that case has been overruled by the Supreme Court of the United States. See Jaster vs Currie, 198 U. S. 144, 25 Sup. Ct. 614, 49 L. Ed. 988. And Mr. Justice Holmes, in delivering the opinion of the court, uses language strongly indicating that the decision of the court of Ohio as to the validity of the service was binding upon the courts of Nebraska. In the Jaster case, the defendant, Currie, had appeared specially in the suit against him in Ohio, and moved the quashing of the service because he was within that jurisdiction for the purpose of taking depositions. The Ohio court overruled the motion, and, defendant, declining to plead further, judgment went by default. Afterwards Jaster sued Currie in Nebraska on the Ohio judgment, and Currie defended on the ground that the plaintiff had fraudulently induced him to go to Ohio for the purpose of bringing suit against him while there. The Nebraska court held the defense good, and gave judgment for the defendant. This judgment was affirmed by the Supreme Court of Nebraska, and on appeal to the Supreme Court of the United States the judgment was reversed, the court saying: "It is assumed that the service of the writ in Ohio would have been

good but for the alleged fraud.   *   *   *   That point
must have been decided by the Ohio courts." And then holds
that the facts alleged did not constitute fraud. Also, in Frawley
vs Pa. Casualty Co. (C. C.) 124 Fed. 259, opinion by United
States District Judge Archbald, it is said: "It may be argued
that the defendant should have moved to set aside the service.
*   *   *   *   This course was open to the defendant,
but it was not confined to it. Had it, indeed, applied to the
Wisconsin courts and been refused, it would possibly have laid
itself open to the charge of having elected its remedy and been
held to have submitted to that jurisdiction." The case of
Thompson vs Whitman, 18 Wall. 457, 21 L. Ed. 897, a leading
case upon the question of the powers of the courts of one state
to impeach the judgments of courts of sister states because
of want of jurisdiction, would seem at first blush to be decisive
of this question. But there is an important distinction between
that case and the one at bar. In the Thompson case the only
evidence of the fact that the vessel was seized within the limits
of Monmouth county was the recital in the judgment that the
court had jurisdiction of the subject-matter. It is true the
opinion states that: "It must be admitted that no decision
has ever been made on the precise point involved in the case
before us, in which evidence was admitted to contradict the
record as to jurisdictional facts asserted therein, and especially
as to facts stated to have been passed upon by the court. But
if it is conceded that the validity of a judgment may be attacked
collaterally by evidence showing that the court had no jurisdic-
tion, it is not perceived how any allegation contained in the record
itself, however strongly made can affect the right so to question it."
The court then proceeds to hold that, although the record showed
the vessel to have been within the limits of the county, it could
be shown in a collateral proceeding that this was in fact not
true. So it will be seen that the decision, after all, only
announces the now well-settled doctrine that the recitals in a

judgment as to jurisdictional facts are only prima facie. And this meaning of that opinion is the more strongly apparent when it is remembered that at that time there was extreme doubt as to whether under the full faith and credit clause the recitals of jurisdictional facts in a judgment were not conclusive; many courts having held prior to that time that a judgment could not be so attacked unless it showed want of jurisdiction on its face, or at least failed to show jurisdiction. It cannot be conceived that if in the trial of the seizure proceedings in New Jersey an issue had been raised as to whether the vessel, conceding it to have been within the limits of Monmouth county, was in fact engaged in fishing for oysters, and therefore subject to seizure, and that fact had been found to exist by the New Jersey court, that the Supreme Court of the United States would have held the judgment could be attacked in the New York courts by showing that the vessel was not in fact violating the laws of New Jersey. And we are strengthened in our view of the effect of this decision by reference to the opinion of Circuit Judge Sawyer, in the case of Holmes vs Oregon, etc., R. Co., 9 Fed. 229, wherein it is clearly pointed out that the Thompson Case applies only to a case where "evidence was admitted to contradict the record as to jurisdictional facts asserted therein," and not as to the finding on a disputed question, either of law or fact. We think that the Thompson case stands squarely in line with those decisions which hold that where the judgment shows personal service was had, the defendant may show that he was in fact not served at all. And it is easy to comprehend the reason for this distinction. Where the officer making the service, who is a part of the court itself, makes a false return showing service when none was in fact had, the vice extends to the very court itself. The judgment is tainted by the fraud of the return, and is an absolute nullity. But, where the nonresident is found within the jurisdiction, and is actually served, the service is good, unless he

can show facts to exist which would require the court to hold the service insufficient. Just as it would have been in the Thompson case, if the vessel had admittedly been within the limits of Monmouth county, and a question of fact had arisen as to whether it were actually engaged in the unlawful business of fishing, the finding of the New Jersey court that it was so engaged would have been conclusive, and not subject to attack in the New York court. So, in this case, the finding of the Missouri court, that the plaintiff had not fraudulently induced the defendant to enter its jurisdiction, or that he was not there for the purpose of taking depositions, or that he had had time to leave, or that, under the Missouri law, he was not entitled to an exemption because there voluntarily as a party, is a final adjudication of the whole question, and the only remedy left to the defendant was an appeal to the higher courts of Missouri. This he did not see fit to do; and the judgment became binding upon him.

Without going further into this matter we may safely rest the determination of this question upon the opinion of the United States Circuit Court of Appeals for the Seventh Circuit, in the case of Sipe et al vs Copwell, 8 C. C. A. 419, 59 Fed. 970, affirming the decision of Circuit Judge Taft of the Northern District of Ohio. 51 Fed. 667. The opinion in that case, by Circuit Judge Lurton, is clear and precisely in point, and we quote from it at length. The court say: "This is a suit upon a judgment rendered by the Supreme Court of Rhode Island against the appellants, Sipe & Sigler, and in favor of the appellee, Copwell. The defense interposed by the answer was that the judgment was void because jurisdiction was obtained by the service of process upon the defendants thereto when they were in attendance upon the Supreme Court of Rhode Island as parties defendant to a suit then pending for trial. A demurrer to the answer was sustained and judgment rendered for the plaintiff in default of further defense.

\*     \*     \*     \*      Is the judgment of the Rhode Island court void? We think it is not. That court had jurisdiction of the subject-matter. This is not contested. It had jurisdiction of the defendants by personal service of the writ of summons. The defendants pleaded in abatement the circumstances under which they had been summoned, and insisted that they were exempt from summons while in attendance as parties to another suit then and there pending against them in the same court. This presented an issue for adjudication. It was decided adversely to the contention then and now urged by appellants. The determination of that question was clearly within the jurisdiction of the Rhode Island court. Its solution depended upon the statute or common law of that state. It decided that the Rhode Island statute exempting witnesses from arrest or summons while in attendance as witnesses did not apply to any other than witnesses. It further decided that there was nothing in the public policy of that state which exempted parties to pending suits from service of process in new suits. Whether these questions were rightly or wrongly decided is a matter of no importance in the present aspect of the question. The court had jurisdiction to determine these issues. The soundness of the adjudication cannot be questioned in a collateral attack." Circuit Judge Taft, who decided the case in the lower court, goes a little further and says: "This is not a case of constructive or substituted service, as in Pennoyer vs Neff, 95 U. S. 714, 24 L. Ed. 565. There was no failure to serve the defendants personally. There was, at the most, only an abuse of the process of the court.     \*     \*     \*      Suppose that a plaintiff were to induce a defendant by fraud to come into the jurisdiction in order to serve him, and that after personal service, the court should refuse, on motion of defendant, to set aside the service, could the jurisdiction of the court in such a case be collaterally attacked? We think not. The abuse of the process of the court can only be corrected by the court

from which it issues, and, if that court fails to find an abuse of its process and refuses to set the service aside when actual personal service is made, we do not think its refusal constitutes anything more than error, which cannot be collaterally inquired into or corrected."

After a careful examination of the authorities, we have been unable to find but one case holding a different doctrine; but it will be seen by an examination of it (Jones vs Jones, 108 N. Y. 415, 15 N. E. 707, 2 Am. St. Rep. 447) that while the court say the fact that one court finds it has jurisdiction does not give it jurisdiction, and that it may be shown in a collateral proceeding in another state that it in fact did not have jurisdiction, still in that case the Texas court took jurisdiction by reason of service out of the state on a nonresident and thus undertook to give to its laws extra territorial effect, and the Supreme Court of New York held that the finding of the Texas court that it had jurisdiction was not binding on the defendant, even though he had appeared specially and moved to quash. It will be observed, however, that the Texas court did not find the existence of facts which, if true, would give it jurisdiction, but it found that it had jurisdiction upon a state of facts which did not, in fact, give it jurisdiction. There is a fundamental and important distinction between the two. We approve of the opinion of the Supreme Court of New York in the case of Jones vs Jones, supra, upon the facts appearing in that case, although the language of the court, that "the fact that a court finds it has jurisdiction does not give it jurisdiction," applied generally is too broad. And in this case, if jurisdiction had been obtained, or attempted, by the Missouri court by personal service without the limits of the state, or by the publication of a warning order, as in Pennoyer vs Neff, supra, and the Missouri court had held, upon such facts, that it had jurisdiction, we would have no hesitancy in holding that, in thus attempting to give its laws extra territorial effect, it acted

without authority of law, and its exercise of jurisdiction would be void.   But this case presents no such aspects.

There is nothing in the contention of the appellee that the full faith and credit clause of the Constitution does not apply to the Indian Territory courts. By section 31 of the Act of May 2, 1890, c. 182, 26 Stat. 96, the Constitution of the United States was made to have "the same force and effect in the Indian Territory as elsewhere in the United States."

For the reasons stated, the court below should have directed a verdict for the appellant.   Reversed and remanded.

TOWNSEND and LAWRENCE, JJ., concur.