GOODRUM ET AL VS BUFFALO.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 942).

1. *Indian Lands—Statutes—Alienation.*

Under Act Cong. March 2, 1895, c. 188 (28 Stat. 907) regarding the allotments of land made to the Quapaw Indians, such allotments are inalienable for twenty-five years from and after the date of the patent. It was held that, though the land might cease to be an allotment after the allottee's death, yet an heir of the allottee could not alienate the land during the stipulated period of twenty-five years, owing to the limitation of the patent.

2. *Same.*

Where the allottees of Indian lands were prohibited by the statutes from alienating their land for twenty-five years, but were permitted to lease the land for three years, a judgment that certain allottees had a right to convey their interest in the land and ordering that a good and valid title be conveyed would be interpreted as merely referring to a leasehold interest.

Error to the United States Court for the Northern District of the Indian Territory; before Justice Wm. R. Lawrence, March 8, 1905.

Action by Arthur Buffalo against C. D. Goodrum and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Arthur Buffalo, a minor Quapaw Indian, brought suit in ejectment against C. D. Goodrum and his tenants for the possession of two tracts of land in the Quapaw reservation, Ind. Ter. Goodrum in his answer in both cases claims title as follows: On September 26, 1896, the lands were conveyed by patent from the United States to John Medicine and Mary Joseph, his wife, both Quapaws, as their allotment and proportionate share of the lands of the Quapaws. The allottees both died,

leaving surviving two children as their sole heirs, Ollie Plylor, the mother, and John Medicine, the uncle, of defendant in error, who inherited each an undivided one-half interest in both allotments. On March 8, 1899, subsequent to the death of the original allottees, John Medicine and Ollie Plylor executed to the plaintiff in error, C. D. Goodrum, warranty deeds to said allotments. Subsequent to the execution of the deeds mentioned, and during the lifetime of the grantors, a controversy arose as to the legality of the sale to Goodrum; it being contended that under Act Cong. March 2, 1895, c. 188 (28 Stat. 907), and the patent issued in conformity to the provisions thereof, the lands attempted to be conveyed by said deeds were inalienable for the period of 25 years, and by virtue of the provisions of Mansfield's Digest an agreed case was made between Ollie Plylor and C. D. Goodrum in the United States Court at Vinita, and between John Medicine and C. D. Goodrum in the United States Court at Wagoner, in both of which cases the following identical judgments were entered: "This cause coming on to be heard  *  *  *  upon the agreed statement of facts and the submission of the controversy herein to the judgment of the court, the court being fully advised in the premises, doth find that the plaintiff  * .  *  *  is the heir at law of John Medicine, deceased, and of Mary Joseph, deceased, and as such heir of said parties is entitled to an undivided one-half interest in the following lands, to wit:  *  * Which lands were allotted  *  *  *  under the act of Congress approved March 2, 1895.  *  *  *  That the plaintiff  *  *  *  on March 28, 1899, sold and conveyed to the defendant C. D. Goodrum her undivided one-half interest in and to the said lands, and that there is a balance due from the said Goodrum to plaintiff of  *  *  *  *. That the said plaintiff and the said John Medicine and Mary Joseph are and were all citizens of the Quapaw tribe of Indians. That the court doth further find that the plaintiff has a full and

complete right to transfer and convey said lands to the extent of her interest therein, and that she is competent to make a deed conveying the same. It is therefore considered, ordered, and adjudged by the court    *    *    *    that she make a deed for the same to the said C. D. Goodrum, upon the payment of the said sum, which deed shall and will convey a good and valid title to the said lands to the said C. D. Goodrum." The judgment at Wagner was entered on May 24, 1899, and the judgment at Vinita on October 2, 1899. The deeds upon which plaintiff in error, Goodrum, relies, were both executed on March 28, 1899; and no other or further deed appears to have been executed after the rendition of the above mentioned judgments. The defendant in error, plaintiff below, claims title to the premises by reason of being the sole heir of the original allottees; and claims that under the act of Congress of March 2, 1895, and the patent issued thereunder, the lands are inalienable for the period of 25 years from the date of the allotments, and that, therefore, the deed from Ollie Plylor and John Medicine, the heirs of the original allottees, was void. The plaintiff in error, Goodrum, contends, "first, that the restriction on the right of alienation only applied to the original allottee, and that upon his death the heirs took free from limitation; second, conceding that this court might be of opinion that the restriction runs with the land, that inasmuch as this is a question for judicial determination, that, as far as this case is concerned, it having been decided by a court of competent jurisdiction that the deed from plaintiff's ancestors to Goodrum was a good and valid deed, he is now estopped by that judgment, even though it was erroneously rendered."

L. F. Parker, Jr., and Wilson & Davis, for plaintiffs in error.

W. H. Kornegay, W. S. Stanfield, O. H. Graves, and Cooter, Thompson & Thompson, for defendant in error.

CLAYTON, J.  As to the first proposition, the plaintiffs in error practically concede their position is not tenable. Act Cong. March 2, 1895, providing for the allotment of lands of the Quapaws (chapter 188, 28 Stat. 907), uses the following language: "That said allotments shall be inalienable for a period of 25 years from and after the date of said patents." The patents issued to the original allottees in this case in the year 1896 contain the following limitations: "But with the stipulation and limitation contained in the aforesaid act, that the land embraced in this patent shall be inalienable for the period of twenty-five years from and after the date hereof." In the case of Moore vs Girten, 5 Ind. Ter. 384, 82 S. W. 848, this court held the lands of the Quapaws were inalienable for 25 years after date of patent, and we see no reason for changing our holding in this respect. The language of the act is plain. The language of the patent is plainer. The act provides that the "allotment" shall be inalienable, while the patent provides that the "land embraced in this patent" shall be inalienable, etc. After the death of the allottee, the land might cease to be an "allotment," but the patent limits the alienation of the land for 25 years.

But a more serious question is presented by the second contention of plaintiffs in error. It is that a judgment of a domestic court cannot be collaterally attacked because of an erroneous construction of the law. And this proposition must be conceded to be correct. We held at our last term, in the case of Tootle · s McClellan (not yet officially published) 103 S. W. 766, that the judgment of a sister state could not be attacked collaterally because of error of law. This can only be done for want of jurisdiction of the subject-matter or person. In this case the ancestors of the defendant in error had, prior to their death, attempted to convey, by warranty deed, all their right, title, and interest in the lands in controversy. Subsequent to the execution of the deeds a question arose

between them and their grantee as to the validity of the deeds, and as to their right to convey. Suits were instituted in courts having jurisdiction of the subject-matter and of the person to determine these issues. There is no proof whatever in the record, although suggested in the brief, that these suits were collusive or fraudulent. And the judgments of the courts therein must be given all the weight to which they are entitled as valid, final judgments. An erroneous construction of the law will not render a judgment void in a collateral attack; for, if the court rendering the judgment had the power to pass upon the particular statute or law, its decision is final unless appealed from. Van Fleet, Collat. Attack, 89; Dugan vs Mayor, etc., 70 Md. 1, 16 Atl. 501; 1 Van Fleet. Former Adjud. 138; Freeman, Judg. 135; Black, Judg. 261. It being clear, then, that the court had jurisdiction, and that its finding, as between the parties and privies, is a final adjudication of the whole matter, it becomes important to consider what the finding of the court was.

The judgment entered in those cases was that the plaintiff has a "full and complete right to transfer and convey said lands, to the extent of his interest therein, and that he is a competent person to make deed conveying the same," and that "he release to the said Goodrum any and all claim that he may have to the undivided one-half interest," etc. From a careful reading of the judgments, it will be noticed that, while it may be true that the court rendering them intended to hold that Ollie Plylor and John Medicine could convey to Goodrum the fee simple title to the lands in controversy, it nevertheless is true that the judgments do not go this far. The courts both found that the plaintiffs had "full and complete right to convey said lands to the extent of their interest therein," and directed that they release any and all claims that they may have, and ordered a conveyance of a "good and valid title," but the extent of the title conveyed or to be conveyed is not stated. And

therefore we must hold that the judgments of the Vinita an
Wagoner courts only go to the extent of finding that the plaintiff
could and did convey only such title as was permitted by lav
to be conveyed. The act of June 7, 1897 (30 Stat. 721, c. 3)
which was passed prior to the execution of the deeds in cor
troversy here, provided that the allottees of land in the Quapav
agency might lease their allotments for the period of thre
years. And this leasehold interest was the only interest c
title in the lands that they could convey at the time of th
rendition of the judgments above referred to. "A deed whic
purports to convey a greater estate than the grantor has wi
be void only as to the excess, and will be construed as a con
veyance of that which it was in his power to convey." 1
Cyc. 657, and cases cited. "Possession under an invalid con
veyance or contract of sale creates a tenancy at will." Roger
vs Hill, 3 Ind. Ter. 562, 64 S. W. 536. And, as the plaintiff
in the suits referred to had the right, under the act of Jun
7, 1897, to convey by deed a leasehold interest, which was
"good and valid title," to the extent of that interest, the judg
ments of the courts at Vinita and Wagoner must only be give
the effect of adjudicating that such an interest was all tha
was conveyed by the attempted warranty deeds. And, a
these deeds were executed in 1899, and the suits in ejectmen
were instituted in 1903, the term for which the leases coul
run under the act of Congress, three years, had expired, an
the defendant in error could maintain ejectment for the pos
session of the premises.

For the reasons above stated, the judgment of the cour
below is affirmed.

GILL, C. J., and TOWNSEND, J., concur.