## GANNON v. JOHNSTON et al.

### No. 4793. Opinion Filed February 3, 1914.

#### Rehearing Denied April 28, 1914.

#### (140 Pac. 430.)

1. **INDIANS—Surplus Land—Restrictions on Alienation—Heirs of Allottee.** The restrictions contained in section 16 of the Supplemental Treaty with the Choctaw and Chickasaw Nations (Act July 1, 1902, c. 1362, 32 St. at L. 643), of one, three and five years, upon alienation of surplus lands of allottees, selected during the life of the allottee, ran with the land, and prevented the heirs of a deceased allottee of such land from alienating the same before the expiration of said periods.

2. **SAME—Allotments—Alienation—Rule of Property.** The doctrine of rule of property cannot be applied to render valid conveyances made in violation of governmental policy.

3. **CHAMPERTY AND MAINTENANCE — Ejectment — Parties.** Where land in the adverse possession of another is conveyed, the grantee may maintain an action in the name of his grantor to recover from the adverse holder.

4. **PARTIES—Adding New Parties—Amendment to Petition.** Where the grantee of land, which, at the time it was conveyed to him, was in the adverse possession of another, brought suit in his own name to recover it, it was not error to permit him to amend his petition so as to join his grantor as plaintiff.

(Syllabus by the Court.)

*Error from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Action by D. R. Johnston and Wilburn Wolfe against C. E. Gannon. Judgment for the plaintiffs, and defendant brings error. Affirmed.

*Bridges & Vertrees* and *H. A. Ledbetter,* for plaintiff in error.

*F. E. Kennamer, Chas. A. Coakley, Cham Jones,* and *Guy Green,* for defendants in error.

ROSSER, Special J. This was an action by D. R. Johnston against C. E. Gannon, to recover certain lands which constituted the allotment of Agnes Wolfe. By amended petition Wilburn Wolfe, Johnston's grantor, was joined as plaintiff. Wilburn Wolfe was the sole heir at law of Agnes Wolfe, who selected and took the land in controversy as her allotment, and while the record is not absolutely clear, it is a fair inference from the whole record, and especially from the stipulation hereinafter set forth, that it was filed during her lifetime. After her death, Wilburn Wolfe sold the land to A. J. Waldock for the expressed consideration of $1,050. There was a conflict in the testimony as to whether or not the entire consideration was paid. The deed was dated October 18, 1903. Gannon claims under a chain of conveyances from Waldock. The plaintiff, Johnston, claims under a deed from Wilburn Wolfe, executed January 4, 1909. The trial court decided that Wolfe's deed to Waldock was good so far as it attempted to convey the homestead of Agnes Wolfe, but that it was invalid as to the surplus. There was a judgment in favor of the plaintiffs for the surplus allotment. From this judgment the defendant, Gannon, has appealed.

It was stipulated between the parties:

"That for a period of eight years after the passage of the Supplemental Treaty between the Choctaw and Chickasaw Nations and the United States, lands inherited under sections 12 and 16 of said Supplemental Treaty were construed to be alienable by the heirs so inheriting the same, whether they were full-blood Indians or otherwise, which construction was given by a majority of the lawyers of the Chickasaw and Choctaw Nations' portion of the state of Oklahoma, by the United States Court prior to statehood, the district courts of the state of Oklahoma since statehood, and the Supreme Court of Oklahoma in 103 Pac. 566. That loan companies, prior to statehood, within and without the Indian Territory, loaned vast amounts of money on

such land; that loan companies since statehood have loaned vast amounts of money on such lands. That there has been invested in such lands, prior to statehood and since statehood, by the farmers and investors approximately $10,000,000. That the lands this agreement has reference to is lands inherited by Indians under sections 12 and 16 of the Supplemental Agreement between the Chickasaws and Choctaws and the United States, which became effective September 25, 1902, wherein the Indian died between September 25, 1902, and April 25, 1906."

The defendant, Gannon, pleaded not only that the title was in him by reason of his chain of title from Waldock, but also pleaded that the plaintiff could not maintain his action because, at the time he purchased, Gannon and his grantors had been in actual possession of the land for more than one year prior thereto, and that, therefore, the conveyance was champertous.

Plaintiff in error contends, first, that the restrictions of section 16 of the Supplemental Treaty do not follow the land into the hands of the heirs of a deceased allottee; second, that, though the statute might have originally been subject to such construction, the facts with reference to the opinions of lawyers and decisions of courts, as set forth in the agreement above quoted, establish a rule of property which would require this court to hold that the lands were not subject to the restrictions in the hands of the heirs; third, that the sale to Johnston was champertous, and that he cannot maintain the action for that reason.

The portions of the Supplemental Agreement between the United States and the Choctaw and Chickasaw Indians, approved July 1, 1902 (chapter 1362, 32 St. at L. 641), which are material to the decision in this case are contained in sections 11 to 16, both inclusive, which are as follows:

"Section 11.  There shall be allotted to each member of the Choctaw and Chickasaw Tribes, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to three hundred and twenty acres of the average allottable land of the Choctaw and Chickasaw Nations, and to each Choctaw and Chickasaw freedman, as soon as practicable after the approval by the Secretary of the Interior of his enrollment, land equal in value to forty acres of the average allottable land of the Choctaw and Chickasaw Nations; to conform, as nearly as may be, to the areas and boundaries es-

tablished by the government survey, which land may be selected by each allottee so as to include his improvements. For the purpose of making allotments and designating homesteads hereunder, the forty-acre or quarter-quarter subdivisions established by the government survey may be dealt with as if further subdivided into four equal parts in the usual manner, thus making the smallest legal subdivisions ten acres, or a quarter of a quarter of a quarter of a section.

"Section 12. Each member of said tribes shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to one hundred and sixty acres of the average allottable land of the Choctaw and Chickasaw Nations, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment, and separate certificate and patent shall issue for said homestead.

"Section 13. The allotment of each Choctaw and Chickasaw freedman shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment.

"Section 14. When the allotments as herein provided have been made to all citizens and freedmen, the residue of lands not herein reserved or otherwise disposed of, if any there be, shall be sold at public auction under the rules and regulations and on terms to be prescribed by the Secretary of the Interior, and so much of the proceeds as may be necessary for equalizing allotments shall be used for that purpose, and the balance shall be paid into the treasury of the United States to the credit of the Choctaws and Chickasaws and distributed per capita as other funds of the tribe.

"Section 15. Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided.

"Section 16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent: Provided, that such land shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than its appraised value."

Section 12 relates solely to the homestead, and under its provisions the homestead was inalienable during the lifetime of the allottee, not exceeding 21 years, but upon the death of the allottee could be alienated by the heirs whether the 21 years had elapsed or not. This is the plain reading of the statute, and it was so held in *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 839. Section 16 is not so clear. In the first place it is provided, not that the land shall be *inalienable* during a certain period, but that it shall be *alienable* after the issuance of patent, "one-fourth in acreage in one year, one-fourth in acreage in three years and the balance in five years." But notwithstanding the difference in language the meaning is the same. The statement that land *shall be alienable* after one, three and five years is equivalent to saying that it could not be alienated before the expiration of said periods of time.

In the case of *Thirty Thousand Land Suits, In re Lands of the Five Civilized Tribes* (D. C.) 199 Fed. 811, Judge Campbell of the Eastern District of Oklahoma, in an opinion which bears the evidence of careful consideration, held that the restrictions on alienation of one, three, and five years ran with the land, and affected it in the hands of the heirs, as well as in the hands of the original allottee, and prohibited alienation by the allottee or his heirs until the expiration of the period mentioned. In that case Judge Campbell analyzed the opinion of Mr. Justice Hughes in the case of *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 495, 56 L. Ed. 839, and came to the conclusion that at the time of rendering that decision "it did not then occur to the court that the one, three, and five-year restriction attached to the land in the hands of the heirs, as well as in the hands of the allottee." He bases this conclusion on this view on the effect of the opinion of the Supreme Court upon the fact that it referred to the restriction as contained in the proviso of section 16. It is possible that his analysis of the decision is correct, but a reading of the entire opinion leaves a different impression upon the writer. It will be noted that Judge Campbell was combatting the theory advanced that *Mullen v. United States, supra,* decided that the restrictions were personal to the allottee. What is said in that opinion with

reference to section 16 is said by way of inducement and leading up to the question of whether or not allotments made under the terms of section 22 of the Supplemental Agreement could be alienated by the heirs of a deceased Indian. The court said:

"It will be observed that the homestead lands are made inalienable 'during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment.' The period of restriction is thus definitely limited, and the clear implication is that, when the prescribed period expired, the lands were to become alienable; that is, by the heirs of the allottee upon his death, or by the allottee himself at the end of the twenty-one years. Thus, with respect to homestead lands, the Supplemental Agreement imposed no restriction upon the alienation by the heirs of a deceased allottee. And the reason may be found in the fact that each member of the tribes, each minor child as well as each adult, duly enrolled as required, was to have his or her allotment; so that each member was already provided with a homestead as a part of the allotment, independently of the lands which might be acquired by descent. On the other hand, the proviso of paragraph 16, which relates to the additional portion of the allotment, or the so-called 'surplus' lands, contains a restriction upon the alienation not only by the allottee, but by his heirs. Whatever may have been the purpose, a distinction was thus made with regard to the disposition by heirs of the homestead and surplus lands respectively."

Proceeding, the court considers the question of whether or not there are any restrictions upon land allotted as provided in section 20 of the Supplemental Agreement. The court refers to the opinion of the Assistant Attorney General for the Interior Department, Van Devanter (now of the Supreme Court), in which he held that under the Creek treaties it was not necessary that a homestead be designated by the land allotted by the heirs of a deceased member of the tribe, and then proceeds:

"We have then a case where all the allotted lands going to the heirs are of the same character, and there is no restriction upon the right of alienation expressed in the statute. Had the lands been allotted in the lifetime of the ancestor, one-half of them considered homestead would have been free from restriction upon his death. The only difficulty springs from the language of paragraph 16 limiting the right of heirs to sell surplus lands. But, on examining the context, it appears that this provision is part of the scheme for allotments to living members.

where there is a segregation of homestead and surplus lands respectively. Whatever the policy of such a designation, which gives a greater freedom for the disposition by heirs of homestead land than of the additional lands, there is no warrant for importing it into paragraph 22, where there is no such segregation. It would be manifestly inappropriate to imply the restriction in such cases so as to make it applicable to all the lands taken by the heirs, and there is no occasion, or authority, for creating a division of the land so as to impose a restriction upon a part of them."

It will be observed upon a reading of the opinion, that the question involved was whether the heirs to whom land had been allotted under the provisions of section 22 could sell at all. The question was not presented as to whether they could sell for a particular consideration, but could they sell, and the court, in effect, said that in a case where lands were taken under the provisions of section 16, a different case would be presented. They did not attempt to limit it to the question of price. The opinion does not say that if the heirs had attempted to sell under the provisions of section 16, it would have been incumbent upon the purchaser that it pay the appraised value. Nothing of that sort is contained in the opinion, and it is believed that the proper interpretation of the language of the court is that a restriction as to time applied to land taken as surplus allotment under the provisions of section 16. Of course, the language of the court, with reference to section 16, was merely *obiter,* but *obiter* of the Supreme Court of the United States upon a question of which it has final jurisdiction in a case which had been so ably argued as the Mullen case, at a time when the court had been considering a number of similar questions, cannot be disregarded by this court.

In the case of *Goodrum v. Buffalo,* 162 Fed. 817, 89 C. C. A. 525, it was held, affirming the Indian Territory Court of Appeals (7 Ind. T. 711, 104 S. W. 942), that under the Act of Congress of March 2, 1895 (28 St. at L. 907, c. 188), which provided that the allotments of the Quapaws should be inalienable for a period of 25 years from and after the date of patents, this restriction ran with the land, and prevented the heirs, as well as

the immediate allottee, from conveying within the prescribed period. It was this decision that Judge Campbell relied upon in case *In re Lands of the Five Civilized Tribes* (D. C.) 199 Fed. 811.

In the case of *United States v. Aaron,* decided by the Circuit Court of the Western District of Oklahoma, 183 Fed. 347, it was held that the provision of Act June 28, 1906, 34 St. at L. 539, with reference to the land of the Osage Tribe of Indians, that they shall be inalienable until otherwise provided by act of Congress, was a restriction running with the land and against alienation, even after the land had descended to the heirs of the allottee.

It is with regret that the conclusion is arrived at that the surplus lands were not alienable by the heirs before the expiration of one, three, and five years. The doctrine of the rule of property cannot avail the defendant. No rule of property can be built up in the face of the statute, where there is a governmental policy involved. The question involved here is not merely a proprietary question between individuals, but there is a governmental policy involved. *Hickman v. U. S.,* 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. It would not be proper to pass over this question of the effect of the rule of property upon the rights of the parties without calling attention to an erroneous statement of fact in the agreement. The agreement refers to the case of *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566, as holding that lands, such as are involved here, could be alienated by the heirs before the expiration of the one, three, and five-year period. The question involved in *Hancock v. Mutual Trust Co., supra,* was whether lands allotted to the heirs of a member of a tribe who had died before selecting his allotment, as provided by section 22 of the Supplemental Treaty (32 St. at L. 641), could be alienated. It was held that they could, and that view was upheld in the case of *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 495, 56 L. Ed. 334.

The remaining question is as to whether the plaintiff is prevented by the rule against champerty from maintaining this action.

The cases of *Huston v. Scott,* 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721; *Powers v. Van Dyke,* 27 Okla. .27, 111 Pac. 939, 36 L. R. A. (N. S.) 96; and *Martin v. Cox,* 31 Okla. 543, 122 Pac. 511, establish the rule that a conveyance of real estate in the adverse possession of another, where the grantor has not been in possession receiving the rents and profits one year, is void as against the person in possession, though good as between the parties. These cases were followed by Judge Campbell of the Eastern District of Oklahoma in the case of *Bell v. Cook* (C. C.) 192 Fed. 597, and in *Miller v. Fryer,* 35 Okla. 145, 128 Pac. 713, the rule was applied to·a case where the grantor was an allottee whose restrictions had not been removed at the time he placed the adverse holder in possession, and where the adverse holder's deed was absolutely void bcause the restrictions had not been removed, and this rule was followed in *Ruby v. Nunn,* 37 Okla. 389, 132 Pac. 128.

Those cases, however, are not decisive of this one. In this case the suit was first brought in the name of the grantee, but the petition was afterwards amended, and the allottee, Wolfe, ·was made a party plaintiff. No question of surprise or lack of time to prepare to meet the new party is raised. The question involved here is whether the suit can be·maintained in the name of the allottee grantor, and whether it was proper to permit him to be joined as plaintiff after the suit was brought. The suit can be brought in the name of the grantor in all the states where the champertous deed is good between the parties. No authorities to the contrary have been found.

In the case of *Thompson v. Richards,* 19 Ga. 594, Mr. Justice Lumpkin said:

"It is straining pretty hard perhaps to adopt the 32 Henry VIII. into a new country like this has been; and we feel no disposition to relax the rule which allows the grantee, whose deed is made void by that statute, to use the name of his grantor to recover the premises."

In the case of *Pearson v. King,* 99 Ala. 125, 10 South. 919, it was held that, though such conveyances were void, the grantee could bring suit in the name of the grantor, and the grantor

could not prevent the use of his name for such a purpose. The authorities are reviewed at considerable length in this case. And to the same effect is *Coogley v. Rogers,* 25 Fla. 853, 7 South. 391; *Edwards v. Pankhurst,* 21 Vt. 473; *Hamilton v. Wright,* 37 N. Y. 502; *Steeple v. Downing,* 60 Ind. 478. See, also, *McMahan v. Bowe,* 114 Mass. 140, 19 Am. Rep. 321; *Galbraith v. Payne,* 12 N. D. 164, 96 N. W. 258. In North Carolina the statute specially permits the bringing of an action in the name of the grantor.

Neither was it error to permit the grantor, Wolfe, to be made a party. An answer was filed after he was made a party, and no one was injured by the fact that he was made a plaintiff by amendment rather than at the beginning of the action. In the case of *Augusta Mfg. Co. v. Vertrees,* 4 Lea (Tenn.) 75, a proceeding similar to that adopted in this case was followed, and it was held that the grantor could be made a party plaintiff by adding a new count to the declaration after suit was brought. In the course of the opinion the court said:

"Formerly, the plaintiff, whose deed was void for champerty, might add a count in the name of his grantor, in order to have the benefit of the title he had bought. *Wilson v. Nance,* 11 Humph. (Tenn.) 190. The same practice was sanctioned by this court, under the Code, during the last term at Knoxville. If there were no privity between the plaintiff and the new party, the additional count would be treated, for all purposes of defense, as the commencement of a new suit as of the date of his filing: *Corder v. Dolin,* 4 Baxt. (Tenn.) 240. If there were privity, as in the case of grantor and grantee, where the deed was void for champerty, it was held under the old practice that the amendment would relate back to the commencement of the suit, and place the rights of the parties on the same ground as if it had been originally incorporated in the writ and declaration: *Nance v. Thompson,* 1 Sneed (Tenn.) 321. The reason was, as stated in that case, that no new right or title is set up. 'It is rather,' says the judge, 'a different statement of the same cause of action or right of recovery, adapted to a different state of proof. The plaintiff merely seeks, in aid of his right to use the name of his vendor, as he has the right to do, and to draw to the equitable title in himself the mere dry legal title remaining in the vendor with which it was attempted ineffectually to vest him.'"

It has been held several times that it was not error to join the grantor and grantee in the action in order to take advantage of every phase of the evidence. *Pitts v. McWhorter,* 3 Ga. 5, 46 Am. Dec. 405; *Jackson v. Leggette,* 7 Wend. (N. Y.) 377; *Livingston v. Proseus,* 2 Hill (N. Y.) 526; *Williams v. Jackson,* 5 Johns (N. Y.) 489.

Upon Chief Justice HAYES and Justice WILLIAMS certifying their disqualification, the Governor appointed Judges MALCOLM E. ROSSER and J. F. SHARP, of the Supreme Court Commission, to sit in their places.

The judgment of the court below is affirmed.

All the Justices concurr.