ROBERT FORBES v. JOHN HIGGINBOTHAM.

1. DEED — *Date, Questioned* — *Finding, Sustained.* The dates of a certain deed had first been written April 30, 1867, and afterward changed to August 30, 1868. If the deed was executed on April 30, 1867, it was valid; but if not executed until August 30, 1868, it was void as to one of the grantors, for prior to that time he died. The trial court found that the deed was executed on April 30, 1867. *Held*, That the evidence is sufficient to sustain such finding.

2. INDIAN LAND — *Possession and Improvement by Grantee* — *Full Title in Defendant.* The grantors in the above-mentioned deed were Pottawatomie Indians, and the land conveyed by them was Indian land; and the grantees mentioned in such deed afterward conveyed the

land to the defendant in this case, who was an innocent and *bona fide* purchaser of the land for a valuable consideration, and who afterward took the actual possession of the property, and held the quiet and undisturbed actual possession thereof for more than three years, and made lasting and valuable improvements thereon. *Held*, That under § 3, chapter 79 of the Laws of 1874 (Gen. Stat. of 1889, ¶ 3305), the defendant has obtained the full, complete and absolute title to the property.

### *Error from Shawnee District Court.*

THIS was an action in the nature of ejectment, brought in the district court of Shawnee county, on August 4, 1885, for the recovery of certain land hereafter described. At the September term, 1887, the case was tried before the court below without a jury, and the court made the following findings and conclusions of fact and law, and rendered the following judgment:

"FINDINGS OF FACT.

"1. Je-Mahn and Louisa Je-Mahn were husband and wife, and both of them were members of the Pottawatomie tribe of Indians.

"2. Said Je-Mahn and wife had born to them two children, named See-bus-sum and Pee-quash-ken.

"3. Prior to 1867, the N.E. ¼ of sec. 7, town 11, range 15, in Shawnee county, Kansas, was allotted to Je-Mahn as one of the allottees of the Pottawatomie tribe of Indians, under a treaty with the United States and said tribe of Indians.

"4. On the 30th day of April, 1867, Je-Mahn and Louisa his wife executed a warranty deed to the land described in the plaintiff's petition, to George L. Young and Josetta Young his wife, and acknowledged the same before A. R. Button, justice of the peace; this deed was duly filed for record in the office of the register of deeds of Shawnee county, Kansas, on the 17th day of September, 1868.

"5. On the 30th day of April, 1867, George L. Young and Josetta Young his wife executed to the defendant, John Higginbotham, a warranty deed to the land described in the plaintiff's petition, and acknowledged the same before A. R. Button, a justice of the peace, which deed was duly filed for record in the office of the register of deeds of Shawnee county, Kansas, the same day.

"6. On the 21st day of August, 1868, a patent was issued

by the government of the United States to Je-Mahn for the N.E. ¼ of section 7, township 11, range 15, in Shawnee county, Kansas; said patent was issued in pursuance of the allotment previously made to the said Je-Mahn; the patent was filed for record in the office of the register of deeds of Shawnee county, Kansas, on the 17th day of September, 1868.

"7. Je-Mahn died in the fall of 1867, and left surviving him a wife and two children — Louisa, his widow, and See-bus-sum and Pee-quash-ken, his two children.

"8. On the 10th day of April, 1868, Louisa, widow of Je-Mahn, married Eli Shearer, in Shawnee county, Kansas.

"9. On the 23d day of July, 1880, Louisa Shearer executed to the defendant, John Higginbotham, a warranty deed for the premises described in the plaintiff's petition, which deed was filed for record on the 3d day of September, 1880. The Louisa Shearer mentioned in the deed was formerly Louisa Je-Mahn.

"10. On the 7th day of July, 1880, N. M. Juneau was appointed by the probate judge of Shawnee county, Kansas, guardian of See-bus-sum and Pee-quash-ken, minor heirs of Je-Mahn, deceased.

"11. On August 2, 1880, N. M. Juneau, guardian as aforesaid of See-bus-sum and Pee-quash-ken, minor heirs of Je-Mahn, deceased, sold the undivided one-half of the land described in plaintiff's petition, to the defendant, John Higginbotham, for the sum of $495, having first obtained the necessary and proper authority from the probate court of Shawnee county to sell the same as such guardian; the plaintiff, Robert Forbes, was present at such sale, and bid upon said land at said guardian's sale; the sale so made was reported to the probate court, and said sale so made was confirmed on August 21, 1880; N. M. Juneau, as such guardian, in obedience to the order of said probate court, executed to the defendant, John Higginbotham, a guardian's deed for the undivided one-half of the premises described in the plaintiff's petition, which deed was filed for record in the register of deed's office on August 21, 1880; the two minor children mentioned in this deed were the two children of Je-Mahn, deceased.

"12. Under and by virtue of the said deed executed by Je-Mahn and wife to George L. Young and Josetta Young, and a deed from Young and wife to the defendant, John Higginbotham, and the deed from Louisa Shearer to the said Higginbotham, and the said guardian's deed, executed as aforesaid,

the said John Higginbotham, in the fall of 1880, took actual possession of the land described in plaintiff's petition, and fenced the same in the fall of 1880, and broke about 100 acres; and during all of the time since the fall of 1880 the defendant, John Higginbotham, has been in the quiet and undisturbed actual possession of all of said land; the said John Higginbotham then took possession of the land in good faith, and believing that he was the owner thereof; he bought the same for a valuable consideration and in good faith.

"13. The petition in this case was filed and this suit commenced on the 4th day of August, 1885.

"14. On the 8th day of May, 1880, Louisa Shearer and Eli Shearer executed to Robert Forbes, plaintiff, a warranty deed to the land described in the plaintiff's petition, which deed was duly filed for record in the office of the register of deeds of Shawnee county on the 24th day of May, 1880.

"15. On the 21st day of May, Peter Wash-ko-no-bee and See-bus-sum and William E. Thompson executed to Robert Forbes a warranty deed to the land described in the plaintiff's petition, which deed was duly recorded on the 24th day of May, 1880.

"16. At the time of the execution of the deed by Peter Wash-ko-no-bee, See-bus-sum, and Wm. E. Thompson, and dated May 21, 1880, the said Peter Wash-ko-no-bee and See-bus-sum were minors, of the age at that time of from 14 to 16 years, and signed their names by marks.

"17. After N. M. Juneau had been discharged by the probate court as guardian, Robert Forbes, the plaintiff in this case, was appointed guardian by said court of the two minors of Je-Mahn, namely, See-bus-sum and Pee-quash-ken, on the 19th day of January, 1881, and on the 16th day of March, 1881, commenced suit in the district court of Shawnee county, Kansas, as guardian of said minors, to set aside said guardian's deed made by Juneau to the defendant, John Higginbotham, and on the — day of ——, 188-, said suit was decided, on demurrer to plaintiff's petition, in favor of said John Higginbotham, and judgment rendered accordingly.

"18. At the time of the commencement of the suit by Robert Forbes as guardian against John Higginbotham, he had the deed upon which he now seeks to recover the one-half of this land.

"19. Said Peter Wash-ko-no-bee and See-bus-sum were the children of said Je-Mahn and his wife Louisa Je-Mahn —

now Louisa Shearer—and the heirs of Je-Mahn; and on the death of Je-Mahn one undivided half of the land in controversy descended to the two children, and the other one undivided half of said land descended to their mother, Louisa Shearer, widow of Je-Mahn.

"20. All of the deeds and conveyance heretofore referred to were duly acknowledged and delivered before being recorded.

"21. When N. M. Juneau, guardian of See-bus-sum and Pee-quash-ken, filed his petition in the probate court praying for an order of said court to sell the undivided one-half of the premises in controversy as the property of said minor children referred to in finding of fact No. 11, the said guardian caused the notice of the time and place of hearing said petition to be given as hereinafter stated; said petition of said guardian for such order of sale was filed in the probate court July 17, 1880; and among other proceedings of said court, the following were had, viz.: [Here follow various proceedings.] Such further proceedings were had that such real estate in controversy was sold and conveyed by such guardian, according to the forms of law, to the defendant, John Higginbotham; as found in conclusion of fact No. 11, aforesaid.

"22. The plaintiff and defendant are both white men, and are not nor never were members of the tribe of Pottawatomie Indians."

"CONCLUSIONS OF LAW.

"1. The plaintiff's cause of action did not accrue within three years before the commencement of this action, and this action is within § 3 of an act entitled 'An act to protect *bona fide* purchasers of Indian lands,' approved March 7, 1874, and plaintiff's cause of action is barred by said act of the legislature.

"2. The issues are with the defendant, and said defendant is entitled in law to judgment against the plaintiff for his costs paid, laid out and expended in this action."

"JUDGMENT.

"It is therefore, on consideration, ordered, adjudged and decreed by the court, that the plaintiff take nothing by his said action, and that the defendant have and recover of and from the plaintiff his costs paid, laid out, and expended, taxed at $——.''

The plaintiff below, as plaintiff in error, brings the case to this court for review.

*Wm. P. Douthitt*, and *W. C. Webb*, for plaintiff in error.
*Hazen & Isenhart*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The first and principal question involved in this case is, whether the fourth finding of fact made by the court below is sustained by sufficient evidence or not. On the trial of the case a deed of conveyance was introduced in evidence, answering to the description of the deed described in the fourth finding of fact in every particular, except that *prima facie* it purports to have been executed on August 30, 1868, instead of April 30, 1867. If such deed was in fact executed on April 30, 1867, then the finding is correct, and no valid objection can be urged against the regularity or validity of the deed as a deed. But if it was executed on August 30, 1868, then it must have been a forgery so far as one of the grantors, Je-Mahn is concerned, for he was dead at that time, although it may have been the valid deed of, and may have been executed and acknowledged by the other grantor, Louisa Je-Mahn, for she was still alive and as competent to execute a deed as she ever was. Both this deed and the deed described in the fifth finding of the court below, to wit, a deed executed for the same land on April 30, 1867, by the grantees mentioned in the first deed, George L. Young and Josetta Young his wife, to John Higginbotham, were introduced in evidence, and also A. R. Button, the justice of the peace before whom these deeds were acknowledged, was introduced as a witness on the trial. So also was Higginbotham. But for some unexplained reason neither Young nor his wife, nor Louisa Je-Mahn, nor Ben Payne, nor B. T. Payne, was introduced as a witness in the case by either party, nor was the testimony of any one of them given on the trial. Payne was the person who wrote these deeds, or did the writing in filling them up, and who witnessed the Je-Mahn deed and was present when it was acknowledged. The evidence introduced on the trial shows that where the

dates occurred in the Je-Mahn deed such dates were originally April 30, 1867; but they had afterward been erased or partially erased, and the dates August 30, 1868, were written over them. The plaintiff claims that the dates were altered before the execution of the deed, and therefore that it was not executed until August 30, 1868, and therefore that the deed was necessarily void and a forgery as to Je-Mahn, who was then dead. He also claims that it was a forgery as to Louisa Je-Mahn; but there is no reason why it should be considered a forgery as to her, except Je-Mahn's death, and she was then married to Eli Shearer.

On the other side, the defendant claims that the deed was properly executed on April 30, 1867, and that all the changes made in the deed were made after its execution and delivery to the Youngs, and after Young and wife's deed to Higginbotham had been executed and delivered to him. There is no positive evidence as to when these changes were made, and therefore the whole thing is left for inference from the surrounding facts and circumstances. That the grantees mentioned in this deed, George L. Young and Josetta Young, on April 30, 1867, executed their deed for the same land to Higginbotham, cannot be questioned; and it would hardly seem probable that Higginbotham would want such a deed unless he believed that Young and wife had at that time or prior thereto received their deed from Je-Mahn and wife. Higginbotham's deed from the Youngs would be worth nothing except for the Je-Mahn deed to the Youngs. Both of these deeds were introduced in evidence, and the court below had an opportunity of seeing them. The court could see whether the same blanks were used for both deeds, or not; whether the same person had written or filled up both deeds, or not; whether the two deeds had been written or filled up from the same ink, or not. In the deed executed by George L. Young and wife, they wrote their own signatures. In the deed executed by Je-Mahn and wife, their marks only were made. Both deeds were acknowledged before A. R. Button, a justice of the peace of Shawnee county, and he wrote his own sig-

nature. The court below had an opportunity of seeing whether all these signatures and marks were made from the same ink, or not, and also whether the ink used in making these signatures and marks was the same kind of ink that was used in filling up the deeds originally, or in making the changes afterward. If the changes were made by using a different kind of ink from that used in making these signatures and marks, the inference would be strong that the changes were made after the execution of the deeds. If Je-Mahn had been living on August 30, 1868, the presumption would be that the changes were made before the execution of the deed; but there is also a presumption, and a strong presumption, in favor of the validity and truthfulness of the acknowledgment attached to the deed. In the acknowledgment the justice of the peace, Button, certifies: "Personally came Je-Mahn and his wife Louisa, to me personally known to be the identical persons," etc., who executed the deed. Now as Je-Mahn was dead on August 30, 1868, but was living on April 30, 1867, there would be a strong presumption on that account, and in favor of the validity and truthfulness of the acknowledgment, that the acknowledgment was in fact taken on April 30, 1867, and not on August 30, 1868. Besides, the justice of the peace had seen Je-Mahn — or "Steamboat," as he was sometimes called — and also slightly knew his wife, Louisa, and probably could not have been mistaken as to their identity. It would seem strange that he would or could have been mistaken on August 30, 1868, as to Louisa, and should have taken an acknowledgment from some other woman who was there pretending to represent Louisa, when in fact he had, only the April before, performed the marriage ceremony in marrying her to Eli Shearer. While the justice's memory upon this whole subject is not very strong, yet he believes that Je-Mahn and Louisa Je-Mahn did in fact appear before him when the acknowledgment was taken; and as before stated, this could not have so occurred, so far as Je-Mahn is concerned, on August 30, 1868, but it could have so occurred on April 30, 1867. As we understand the case, it

1. Date of deed, questioned; finding sustained.

could be of but little benefit to the plaintiff to suppose that Louisa and some other person pretending to be Je-Mahn appeared before the justice of the peace on August 30, 1868, for at that time, as Je-Mahn was dead, and as she was his wife at the time of his death, she took one undivided half of his real estate, and could convey such undivided half of the property. As to the other half, see finding of fact No. 11. It does not seem that the Pottawatomie Indians are very particular with reference to names. Louisa's original name was Louisa Pa-ya. She married a man by the name of Wash-ko-no-bee. He died, and then she married Je-Mahn. He died, and then she married Shearer. Yet one of her sons, born while she was the wife of Je-Mahn, executed a deed to the plaintiff, Forbes, while she was the wife of Shearer, executing such deed in the name of Peter Wash-ko-no-bee, the surname of his mother's first husband, and for land in which he could have no possible interest unless he was the son of Je-Mahn. The theory of the plaintiff is, that the deed from Je-Mahn and wife to Young and wife is an absolute forgery. But if so, why did the persons forging the same, in 1868, first use the dates April 30, 1867; and why did they afterward change this date to August 30, 1868? Unquestionably, Ben Payne, or B. T. Payne, filled up the deed claimed to be a forgery, and also witnessed its execution, and he possibly also filled up the deed executed by Young and wife to Higginbotham. Now what possible motive or interest could Payne have had in forging the deed in question? Besides, it appears that at the time the deed was acknowledged, Young and Payne and several others were present. Now if the deed was actually a forgery, why should the parties forging the same have obtained its acknowledgment before such a number of people? Would they not have attempted to accomplish this result by more secret methods? Probably the true theory of the case is this: The two deeds were executed and acknowledged at the same time. They were first filled up at the office of Payne or Young, and by Payne, and then all the parties —Payne, and Young and wife, and Je-Mahn and wife, and

possibly Higginbotham, and perhaps others — went before the justice of the peace, and then and there both deeds were signed and acknowledged, and the acknowledgments certified to by the justice, and the deeds delivered.  The deed to Higginbotham was probably at once delivered to him, or if he was not present, then sent to him; and the one executed to Young and wife was probably then delivered to them, and retained by them until after August 21, 1868, when the patent was issued to Je-Mahn, and then Young or some other person thought that the deed executed to Young and wife should bear date subsequent to the date of the patent, and changed the dates of the deed so as to make it appear that it was executed after the date of the patent; and then both the deed and the patent were filed with the register of deeds for record at the same time, to wit, on September 17, 1868.  Higginbotham never received this deed from Je-Mahn and wife to Young and wife until after it was recorded, and he had nothing to do with making any of the changes.  It does not appear from anything in the case that any person had any real interest in making these changes, unless possibly Young and wife had.  It may have been supposed that the deed would not be good unless it was dated subsequently to the date of the patent, and that unless the deed was good Young and wife would be liable on their covenants contained in their deed to Higginbotham; for their deed to Higginbotham was a general warranty deed, with all the usual covenants.  But as Higginbotham had already purchased the property from Young and wife, and had obtained his deed from them, any change of the deed from Je-Mahn and wife to Young and wife after that time, and without Higginbotham's consent or knowledge, could not affect Higginbotham's title.  Presumptively, Higginbotham was an innocent, honest and *bona fide* purchaser of the property at the time he obtained his deed from Young and wife.  The consideration expressed in that deed is $600, and there is nothing in all the case tending to show that such was not the real consideration.  Higginbotham also took the actual possession of the property in controversy in the fall of 1880,

and had the quiet and undisturbed actual possession thereof up to the commencement of this action, which was on August 4, 1885; and during that time he made lasting and valuable improvements thereon. This we think unquestionably gave to him the absolute title to the property, under § 3 of chapter 79 of the Laws of 1874, even if he did not have such title before. (Gen. Stat. of 1889, ¶ 3305.) This section relates to titles procured to Indian lands by a purchaser in good faith, for a valuable consideration, from the Indian himself, or from his heirs or his or their grantees; and the section reads as follows:

"SEC. 3. That three years' quiet, undisturbed, actual possession of any such land by any purchaser thereof in good faith as aforesaid, under color of title, shall be a complete bar to any action for the recovery of said lands by the holders of any adverse title to the same, and such possession shall be deemed to vest in the possessor a full and complete title to the same in fee simple."

After the patent was issued by the United States, and after all the title had passed from the United States to Je-Mahn's heirs or grantees, then the limitation for the commencement of actions contained in the aforesaid section had full opportunity to operate, provided, of course, that the purchaser took the actual possession of the property; and Higginbotham in this case did take the actual possession of the property in 1880, and thereby brought this limitation into active operation, and it so operated before this action was commenced as to fully and completely bar all action founded upon any adverse title. This view in no way conflicts with the view taken in the case of *McGannon v. Straightledge*, 32 Kas. 524.

2. Action, barred; full title in defendant.

It is perhaps unnecessary to extend this opinion farther, for what we have already decided will give to Higginbotham the title to the property in controversy, and will affirm the judgment of the court below. But Higginbotham has other and further muniments of title. He has the deed of Louisa Shearer, formerly Louisa Je-Mahn, executed on July 23, 1880,

and also the deed of the guardian of the two children of Je-Mahn, executed on August 21, 1880; and he took the actual possession of the property under these two deeds as well as under the deeds from Je-Mahn and wife to Young and wife and from Young and wife to himself.

The judgment of the court below will be affirmed.

All the Justices concurring.