## MILLER v. FRYER.

No. 2996.  Opinion Filed December 3, 1912.

(128 Pac. 713.)

**CHAMPERTY AND MAINTENANCE—Deed by Party Out of Possession.** By reason of section 2215, Comp. Laws 1909, a deed conveying real estate, executed by a grantor at a time when he was not in possession of the conveyed premises, is void as between the grantee and a person who was at the time of the conveyance in adverse possession of the conveyed premises; and this rule applies where the grantor is an allottee of the Chickasaw and Choctaw Tribes of Indians upon whose power to alienate his allotment the restrictions have been removed prior to the time of the execution of the deed, and where the person in possession originally obtained possession and claims title to the conveyed premises by virtue of a void deed executed by the allottee before the removal of restrictions upon his power to alienate his allotted lands.

(Syllabus by the Court.)

*Error from District Court, Atoka County;*
*Robert M. Rainey, Judge.*

Action by C. W. Miller against A. J. Fryer. Judgment for defendant, and plaintiff brings error. Affirmed.

*J. M. Humphreys,* for plaintiff in error.

*Winfield S. Farmer,* for defendant in error.

HAYES, J. This is a suit in ejectment brought originally by plaintiff in error, C. W. Miller, against defendant in error, A. J. Fryer, for the possession of certain lands fully described in plaintiff's petition. After trial to the court without a jury, the court rendered judgment in favor of plaintiff for the possession of twenty acres of the land involved and against plaintiff, and in favor of defendant for the remaining 80 acres. From the judgment against plaintiff as to the 80 acres plaintiff prosecutes this appeal. Defendant, as to the judgment against him for the twenty acres, has made no complaint, either by appeal or cross-appeal.

The facts, briefly stated, are: That one William Butler and his wife, Adeline Butler, are Choctaw freedmen duly enrolled as such on the approved rolls of freedmen of the Choctaw Tribe of Indians. On the 21st and the 22d days of December, 1904, said Butler and his wife were allotted each 40 acres of land as their share of the tribal lands of the Choctaw Indians to which they were entitled as freedmen of said tribe. On the 22d day of December, 1904, Butler and his wife conveyed by warranty deed the lands allotted to them and now in controversy, to defendant, who caused the deed to be recorded. On the 27th day of July, 1908, Butler and his wife executed two separate deeds by which they conveyed to plaintiff the same lands, and his deeds were duly recorded. At the time of the execution of the deeds to defendant, he was then in possession of the lands conveyed, and has been continuously in possession thereof at all times since that date, and has been occupying and cultivating and using the same, and had been in exclusive possession thereof for more than one year prior to the time of the execution of the deeds, and had during such time collected the rents and profits therefrom. In fact, neither the

Butlers nor plaintiff has ever been in actual possession of said lands at any time.

It is the contention of plaintiff that the deed executed to defendant is void, because the same is in violation of section 29 of the act of Congress, commonly known as the Curtis Act, approved June 28, 1898 (30 St. at L. p. 495, c. 517). It is his contention that the statute referred to makes the entire allotment of freedmen of the Chickasaw and Choctaw Nations a homestead and inalienable for a period of 21 years from the date of patent; that defendant's deed therefore is void and conveyed to him no title; that his (plaintiff's) deed was taken more than 60 days after the 27th day of May, 1908, upon which date there was enacted by Congress an act removing restrictions upon the power of said freedmen to alienate their allotted lands. Act May 27, 1908, c. 199, 35 St. at L. p. 312. Defendant, on the other hand, contends that said section 29 of the Curtis Act does not make the allotment of freedmen of the Choctaw and Chickasaw Nations a homestead, and that the act of Congress approved April 21, 1904 (33 St. at L. 189, c. 1402), removes all restrictions on the allotted lands of freedmen, and that the deed to defendant conveyed all the title of the allottees in said land, and that at the time of the execution of the deeds to plaintiff they had no title to convey to plaintiff. It is unnecessary, however, to determine these contentions of the respective parties; for, if we assume without deciding that section 29 of the Curtis Act makes the entire allotment of a Chickasaw or Choctaw freedman a homestead, and imposes restrictions upon its alienation for a period of 21 years, and defendant's deed, therefore, was void, because executed in violation of said restrictions upon the allottee's power to alienate, still the judgment of the trial court must be affirmed upon another ground.

On the 27th day of July, 1908, the date of the conveyance to plaintiff, there was in force in this state section 2215, Comp. Laws 1909, which provides:

"Every person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in

possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a misdemeanor."

This section of the statute has received the consideration of this court, and been applied in several cases, all of which are referred to and reviewed in the recent case of *Martin v. Cox et al.,* 31 Okla. 543, 122 Pac. 511. In this case the court held that the foregoing statute, making it a misdemeanor to buy or sell any pretended right or title to land, where the grantor or those by whom he claims have not been in possession or taken the rents and profits thereof for the space of one year before such conveyance, is declaratory of the common law, and that a conveyance made in contravention thereof by the rightful owner as against the person holding adversely is void, and that it is not necessary in order that such shall be the result of the statute that the person holding shall hold under color of title at the time of the conveyance. It is sufficient if he was in possession adversely to plaintiff and his grantors.

Counsel for plaintiff in error contends that the foregoing statute does not operate to render the deed of plaintiff void, for the reason that, although defendant had been in possession of the land for more than one year prior to the conveyance thereof to plaintiff, defendant had not been in adverse possession for such period of time. ·He contends that there can be no adverse possession of the lands of an allottee upon the alienation of which there are restrictions imposed by the federal government; that no possession, however long and hostile it may be to the allottee, can, under the statutes of limitation, ripen into title. It is well settled that there can be no adverse possession against the federal government which can form the basis of title by estoppel or under the statutes of limitation; and it has been held that the same rule applies where the lands involved are lands that have been allotted to Indians with restrictions upon the alienation of title thereto by the Indians, so long as such restrictions upon alienation exist. *McGannon v. Straightlege,* 32 Kan. 524, 4 Pac. 1042; *O'Brien v. Bugbee,* 46 Kan. 1, 26 Pac. 428. But, where the restrictions upon the alienation of title by the Indian allottee have

been removed, such allottee then stands upon an equal footing with other citizens of the state, and a title against him may be established upon an adverse possession maintained subsequent to the removal of restrictions for the period prescribed by the statute. *Davis v. Threlkeld,* 58 Kan. 763, 51 Pac. 226; *Forbes v. Higginbotham,* 44 Kan. 94, 24 Pac. 348.

But the contention of counsel is based upon a misconstruction of the provisions of the statute, which, except as to the penalty imposed, is declaratory of the common law. It was the fundamental doctrine of the English law of feuds that feoffment was void without livery of seisin, and without possession a man could not make livery of seisin. Out of this doctrine came the simple principle of the common law that a transfer of real property could not be valid unless the grantor had the capacity as well as the intention to deliver possession, which was an essential part of the title and the dominion over the property. 2 Black. Comm. 311; 4 Kent, 447. It was enacted by St. 32 Henry VIII, c. 9:

"That no person shall bargain or sell, or by any means obtain any pretended rights or titles, or take, promise, grant, or covenant to have any right or title to any hereditaments, unless the seller, his ancestors, or they from whom he claim, have been in possession of the same, or the reversion or remainder thereof, or taken the rents or profits thereof, for one whole year next before the bargain and sale, on pain that such seller shall forfeit the whole value of the hereditaments sold; and the buyer or taker, knowing the same, shall forfeit the value of the hereditaments so by him bought or taken, one-half of the said forfeiture to be to the king, and the other to him who will sue for the same."

Discussing this statute, Montague, C. J., said:

"In this point the statute has not altered the common law; for the common law before the statute was that he who was out of possession ought not to bargain, grant, or let his title; and, if he had done so, it should have been void, and then the statute was made in affirmance of the common law, and not in alteration of it; and all that the statute has done is it has added a greater penalty to that which was void by the common law before." (*Patridge v. Strange,* 1 Plow. 880.)

The common-law rule did not require, nor does the statute here involved require, as an element of its violation that the per-

son in possession at the time of the conveyance shall have been in adverse possession for a period of one year. On the other hand, the statute is violated, not only if the grantor is out of possession, and there is some one in adverse possession at the time of the conveyance, but if the grantor is in possession, but has not been in actual or constructive possession in person or by those by whom he claims for the period of one year, or has taken the rents and profits thereof for said period of time. Whatever may be the character of defendant's possession before the removal of the restrictions upon the alienation by the allottees at the time this conveyance was made, plaintiff was not in possession. Defendant then was in adverse possession under the admitted facts in this record; and by reason of that fact the deeds executed by the allottees to plaintiff constituted the violation of the statute, and are, as between plaintiff and defendant in possession, void.

This statute, in our opinion, in no way conflicts with the federal act of May 27, 1908 (35 St. at L. p. 312, c. 199), which provides:

"All lands, including homesteads, of allottees of the Five Civilized Tribes, enrolled as intermarried whites, as freedmen and as mixed-blood Indians having less than half Indian blood, shall be free from all restrictions."

What was intended by this statute was to remove restrictions upon the alienation of their allotments by the classes of allottees named in the statute that have been imposed by the statutes and treaty provisions under which the allotments have been made and to leave such allottees free to convey their lands, subject to the laws of the state regulating conveyances of real estate. The statute of the state here involved does not render valid any deed made in violation of the prohibitions of the treaties against alienation, or operate to vest defendant with any title; but it says to the Indian allottee, as it says to the white citizen of the state:

"You cannot convey a pretended title while out of possession. You must obtain possession by means of the remedy the law affords before a conveyance can be made that will be valid against the person in possession claiming title adversely."

It may not be pertinent to refer to the policy of this law in support of the conclusion we here reach, but we cannot re-

frain from saying that in our opinion it will not operate to the detriment of allottees upon which the federal government now imposes or has heretofore imposed restrictions upon their power to alienate their allotments. It is well known that the peaceable law-abiding small investor is loath to purchase titles upon which there is any cloud or about which there is any dispute, and, although conveyances made in violation of the statute prohibiting alienation are declared by the courts to be absolutely void, such conveyances have the effect to render the allottee's title in the land of less merchantable value; and only the speculator who can buy such land in large quantities and can afford the expense of litigation to clear up such titles will purchase the same, and as a result thereof the unwary Indian allottee who has conveyed in violation of the statute, when he is permitted to sell, finds his market greatly restricted by the clouded condition of his title and the adverse claims made under the void instruments he has executed. Under the operation of the statute here involved, he can convey his land only after he has cleared his title, and removed the adverse claimant from possession thereof, in which condition it will bring its full market value.

From the foregoing views, it follows that the judgment of the trial court should be, and is, affirmed.

All the Justices concur.