**MURROW INDIAN ORPHANS' HOME v. McCLENDON.**

No. 6200—Opinion Filed June 6, 1917.

Rehearing Denied July 31, 1917.

(166 Pac. 1101.)

(Syllabus by the Court.)

**1. Indians—Lands—Sale.**

Congressional Act April 21, 1904, c. 1402, 33 Stat. 204, provides that a finding by the United States Indian agent at the Union Agency that it is for the best interest of an allottee that his restrictions be removed, when approved by the Secretary of the Interior, shall authorize such allottee to convey his restricted lands.

Held, that such recommendation by the United States Indian agent, and the approval of said recommendation by the Secretary of the Interior, is a condition precedent to the right to convey restricted lands, and that a conveyance attempted under this act, prior to the time restrictions are thus removed, is void.

**2. Champerty and Maintenance—Grants of Land Held Adversely.**

Our statute on champerty does not apply to restricted Indian lands. Congress has reserved the exclusive right to control the sales, and prescribe the conditions under which title to these lands may pass. And a conveyance of such lands, made in compliance with the acts of Congress and the rules and regulations of the Department of the Interior, carries title to such lands, as against the world.

Kane, Thacker, and Miley, JJ., dissenting in part.

Error from District Court, Coal County; Robt. M. Rainey, Judge.

Action by James W. McClendon against the Murrow Indian Orphans' Home, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

William T. Hutchings, for plaintiff in error.

J. G. Ralls, for defendant in error.

BRETT, J. This action was commenced in the district court of Coal county by James W. McClendon, defendant in error, against the plaintiff in error, the Murrow Indian Orphans' Home, to clear his title to certain real estate and set aside a deed to said real estate, executed by Susan McGee on the 3d day of March, 1909, purporting to convey this real estate to the Indian Orphans' Home, for a consideration of $1.

Susan McGee died intestate January 26, 1912, and on February 20, 1912, her heirs in consideration of $1,200 conveyed the land involved in this action to one Charles Hudson, who in turn on February 26th conveyed it to the plaintiff, McClendon.

The deed of Susan McGee to the Murrow Orphans' Home was approved by the Secretary of the Interior May 27, 1912, or four months after her death. The trial court held this deed to be void, and this we think was correct. Susan McGee was a full-blood Chickasaw Indian, and this deed, purporting to alienate a portion of her allotted lands, prior to the removal of restrictions of her power to alienate, was void. See Act Cong. June 28, 1898 (30 Stat. at L. 507, c. 517), Act Cong. July 1, 1902 (32 Stat. at L. 641, c. 1362), and subsequent congressional legislation contained in the act of April 21, 1904 (33 Stat. at L. 204, c. 1402), and the act of May 27, 1908 (35 Stat. at L. 312, c. 199). The act of April 21, 1904, provides that:

"All the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the �英lienation of all other allottees of said tribes, except minors, except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application of the United States Indian agent at the Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

And it is clear that on March 3, 1909, the date of the deed to the Murrow Orphans' Home, the Secretary of the Interior had not removed the restrictions upon the alienation of this land, and that this deed was made in direct contravention of the acts of Congress relative thereto. But the orphans' home insists that the approval of this unauthorized and void deed by the Secretary of the Interior, subsequent to the death of the grantor, related back to the date the deed was executed and delivered, and rendered it a valid conveyance, and cites in support of this contention Pickering v. Lomax, 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716; Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49; Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485; Almeda Oil Co. v. Kelley, 35 Okla. 525, 130 Pac. 931. But the treaties construed in these opinions are not applicable in the case at bar. Under the treaty construed in Pickering v. Lomax,

supra, the President was empowered to approve certain Indian deeds, and in that case he approved the deed 13 years after its execution and delivery, and the court held that the approval related back to the date of the execution and delivery, among other things saying:

"The treaty does not provide how or when the permission of the President shall be obtained, and there is certainly nothing which requires that it shall be given before the deed is delivered."

And in the other cases relied upon by the defendant, the treaties and laws therein construed did not make the authorization of the President or Secretary of the Interior a condition precedent to the power of the allottee to convey, but only made their subsequent approval necessary to make the conveyance effective. But the act of April 21, 1904, which controls in the case at bar, does not authorize the Secretary of the Interior to approve the deed of an allottee, but only authorizes him to approve the removal of restrictions; and the removal of such restrictions, under this act, is a condition precedent to the power of the allottee to convey. The act specifically provides that there must be a finding in "each individual case," by the United States Indian agent at the Union Agency, that it is for the best interest of the allottee that the restrictions be removed, and that the finding of the agent, when approved by the Secretary of the Interior and properly recorded, authorized the allottee to execute a conveyance of restricted lands. The Secretary of the Interior under this act had not power to approve a deed, but only to approve the recommendation of the Indian Agent that the restrictions be removed. And his approval of a deed was entirely unauthorized, and added no validity whatever to the instrument.

Rogers v. Noel, 34 Okla. 238, 124 Pac. 976, is a case in which the allottee who had applied for removal of restrictions upon his land, and had received the favorable recommendation of the Indian agent, and the approval of the Secretary of the Interior, effective 30 days thereafter, executed a deed before the expiration of such time and the deed was held void, this court saying:

"As stated, the investigation was made and findings reported by the Indian agent. This was a necessary preliminary act, and condition precedent to the jurisdiction of the Secretary of the Interior to approve or disapprove the findings of the Indian agent. Such findings, therefore, constituted but a step in the procedure necessary by which to attain the desired end. Of itself it accomplished nothing. It was only effectual when approved by the Secretary of the Interior, and until such time no authority in the premises was conferred or right obtained by the allottee. Until the Secretary acted favorably and put his approval in writing, and caused the same to be recorded, the restrictions continued absolute. Only in this manner did the allottee have the right to alienate, and, without this being done and until the expiration of the time fixed in the order of approval in which it might be done, any attempted conveyance was void. As was said in Simmons et al. v. Whittington [27 Okla. 356, 112 Pac. 1018] supra: 'If the deeds made before the removal of restrictions were only voidable, there might be some support for this contention, but they are absolutely void, because prohibited by the law. They bind no one. In legal effect they are nothing; and knowledge of their existence conveyed no notice of the rights of any one because no one can claim any rights under them.'"

The power had not been conferred on Susan McGee by the constituted authorities to execute the deed of March 3, 1909, to the orphans' home, and her attempted conveyance was therefore a nullity, and void. And the unauthorized approval of that deed by the Secretary of the Interior was also a nullity, and added no validity whatever to the deed.

2. But it is claimed by the defendant that section 2260, Rev. Laws 1910, which is our statute on champerty, applies in this case; that the defendant was in adverse possession under color of title at the time the heirs of Susan McGee deeded the land to Hudson, who subsequently deeded it to plaintiff, and that therefore plaintiff's deed was void as to the defendant; and argues that, although the court found that the deed of the orphans' home was not filed for record until six months after plaintiff's deed was put of record, and that the plaintiff before taking deed from Hudson made inquiry of the manager of the orphans' home as to by what right or title the home held possession, and was informed that the home only held under a lease which was soon to expire, and that on the expiration of this lease contract the home would surrender possession, and that regardless of the fact that the home did surrender possession at the time the manager stated to plaintiff that it would, none of this reverted back to the time the heirs of Susan McGee executed the deed to Hudson, and that the plaintiff, regardless of these inquiries, acquired no rights superior to those of Hudson, his grantor.

Assuming, without deciding, that this is true, then the question presented is, Was the deed from these Indian heirs to Hudson subject to or controlled by our statute on

champerty? Under the authority of Ashton v. Noble et al., 46 Okla. 296, 148 Pac. 1042, it was not. In answering the question as to whether the statutes of Oklahoma and the decisions of this court relating to champerty and maintenance apply to a deed made by an Indian to a restricted Indian allotment, the court says:

"On this point we have no doubt but that the government of the United States, in handling the restricted lands of these Indians, could, when authority by laws of the United States is conferred so to do, arrange for the sale and approve a conveyance, passing the title to such lands without inquiring as to whether or not there are persons unlawfully holding adversely, and without regard to our state statutes relating thereto, or our adjudications, holding inoperative conveyances made as against adverse holders, based upon the statute regarding champerty and maintenance. The power of the federal government over these restricted Indian alnds was retained in the Enabling Act, and was agreed to by the people of this state in the Constitution which they adopted. In F. B. Collins Inv. Co. et al. v. Beard, 46 Okla. 310, 148 Pac. 846, this court held that: 'When the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation is involved, we must look to the acts of Congress, and to those acts and laws alone. In other words, if a state law, by its language or through its proper construction or its operation, would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state law fails; and this, because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state; and this reservation of jurisdiction was assented to in the Constitution which the people adopted. To give the desired construction to either of the statutes under consideration would be, in effect, to accomplish the removal of the federal restrictions on the sale of allotted lands, by means of state legislation. Once conceding this principle, it is easily seen that the federal control would be interfered with and might ultimately be entirely suspended. No such construction is possible. Chapman v. Siler, 30 Okla. 714, 120 Pac. 608; Walker v. Brown, 43 Okla. 144, 141 Pac. 681; In re Probate of Will of Emerson Allen, 44 Okla. 392, 144 Pac. 1055: section 1, Enabling Act (running section 413, Williams' Ann. Const.: section 43, art. 25, Constitution); Truskett v. Closser. 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549.'"

Do the statutes of this state, in any way, attempt to regulate or control the terms upon which these restricted lands may be sold, or the conditions under which title to them may pass? No one has title to these restricted lands except the Indian. And his title is by the government so firmly vested in him that even he himself can only divest it with the consent and under the direction of Congress. Congress reserved the right to control the sales, and prescribe the conditions under which titles to these lands might pass. Then how can the state, without the consent of Congress, impose conditions in reference to the passing of these titles? Can a title which is good under the acts of Congress and the rules and regulations of the Department of the Interior be invalidated by a provision in the statutes of Oklahoma? Can these conveyances be burdened with a single provision of our statute, without the consent of Congress? If so, then why can they not be burdened with every provision of our statute with reference to conveyances, and thus the acts of Congress be superseded? We believe that, when the acts of Congress and the regulations of the Department of the Interior say to a purchaser of these lands, "You have title as against the world," the statute laws of Oklahoma cannot impose an additional condition, before recognizing the title of that purchaser as against the world. He has the exact kind of title that the acts of Congress contemplated he should have. And Congress has never seen fit to impose our champerty statute upon these restricted lands. Hence it does not apply. But a purchaser having made his purchase in conformity to the acts of Congress and the regulations of the Department of the Interior takes title as against the world.

The purpose of Congress in placing the restrictions upon the Indians' land was to put the title where the Indian could not interfere with it, or divest himself of it, and to insure that it would remain in him, under the control of Congress and the constituted authorities. But if our statute on champerty applies to these lands, then that purpose has, in a large measure, failed. For then the Indian can put some one in possession under a void deed, as in the case at bar, and then when Congress removes his restrictions, and turns over to him what it intended should be an untainted title, this statute confronts him, and says, Any deed you make is, as against the one in possession, void until you go into court and remove this cloud that you have placed upon your title, and regain the possession that you parted with, through profligance and a void deed. Congress never contemplated that the courts, or any one else, would have to be called to its assistance to enable the owner of these re-

stricted lands to convey by perfect title, when restrictions were removed.

What other purpose could Congress have had in placing the restrictions upon these lands, except to protect the Indian against his own acts? and if our champerty statute applies to these lands, then we repeat that the purpose of Congress has, in a large measure, failed. For upon the removal of restrictions, instead of having the clear and perfect title that Congress intended to preserve for him, he only has a title that he may clear up through the courts, before he can convey anything, as against the one in possession, under a void deed, made in contravention of the act of Congress, and which, unless aided by our champerty statute, would be nothing more than a scrap of waste paper. We know that Congress reserved the right to control these lands, and to enact the laws affecting their conveyance. And our Legislature has never, by a single act, attempted to divest Congress of this control. And this champerty statute has no application, and was intended to have no application, to the restricted lands of an Indian. And the holding in Miller v. Fryer, 35 Okla. 145, 128 Pac. 713, Ruby v. Nunn, 37 Okla. 389, 132 Pac. 128, and Okla. Trust Co. v. Stein et al., 39 Okla. 756, 136 Pac. 746, that this statute does apply to the restricted lands of an Indian, is expressly overruled. In Walker v. Brown, 43 Okla. 144, 141 Pac. 681, the court, speaking through Mr. Justice Kane, says:

"This court has repeatedly held that the Acts of Congress supplant the laws of Oklahoma in relation to Indians; that certain state laws which are applicable to every other citizen are not in force as against or pertaining to the Indians of the Five Civilized Tribes, and that we have here, respecting some matters, two classes of citizens and two legislative sovereignties. Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Kirkpatrick v. Burgess, 29 Okla. 121, 116 Pac. 764; Wilson v. Morton et al., 29 Okla. 745, 119 Pac. 213."

The opinion further says:

"The reason the state cannot legislate for an Indian of the Five Civilized Tribes is that Congress has reserved the right to legislate for him as a dependent people and this guardianship does not cease when an allotment is made and the allottee becomes a citizen of the United States. As was said by Mr. Justice Day in Marchie Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; '* * * Congress has had at all times, and now has, the right to pass legislation in the interest of the Indians as a dependent people; that there is nothing in citizenship incompatible with this guardianship over the Indian's lands inherited from allottees as shown in this

case; that in the present case, when the act of 1906 was passed, the Congress had not released its control over the alienation of lands of full-blood Indians of the Creek Nation; that it was within the power of Congress to continue to restrict alienation by requiring, as to full-blood Indians, the consent of the Secretary of the Interior to a proposed alienation of lands, such as are involved in this case; that it rests with Congress to determine when its guardianship shall cease; and while it still continues, it has the right to vary its restrictions upon alienation of Indian lands in the promotion of what it deems the best interest of the Indian.' "

Then why should an exception be made as to this champerty statute, which enables the Indian to deprive himself of the very thing that Congress has attempted to preserve for him by the restrictions, namely, a clear and perfect title at such time as he might be permitted to convey? In Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, it is held that a solemn judgment of a court of record "is ineffectual and void in so far as it undertakes to authorize a conveyance of said lands in violation of the congressional restrictions thereon."

The plaintiff in this case is entitled to the relief granted by the district court.

The judgment is affirmed.

SHARP, C. J., and TURNER, HARDY, and OWEN, JJ., concur. RAINEY, J., having been the trial judge in the district court, does not participate. KANE, THACKER, and MILEY, JJ., dissent as to the second paragraph of the syllabus.