### SELLS et al. v. MOONEY.

No. 9600—Opinion Filed May 25, 1920.

Rehearing Denied July 6, 1920.

(Syllabus by the Court.)

1. **Indians—Alienation of Land—Champerty.**
Where a restricted Cherokee Indian during such restrictions attempts to convey by deed a portion of his allotted lands, and his grantee enters into and holds possession thereof for more than one year, and subsequently, after the removal of such restrictions, said Indian by warranty deed conveys to another, the validity of the second conveyance is not affected by the champerty statute (section 2260, Rev. Laws 1910), as the alienation of such land is controlled by congressional enactment.

2. **Same—Rule of Property.**
The doctrine of "rule of property" cannot be applied to render valid conveyances made in violation of governmental policy, nor can decisions of this court rendered subsequent to the execution and delivery of the deeds relied upon be invoked to establish a rule of property to validate such deed.

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by Warren Mooney against Pearl Sells, nee Hayes, and others, for possession of land, to quiet title, and for rents. Judgment for plaintiff on demurrer to defendants' answer and cross-petition, and defendants bring error. Affirmed.

B. B. Blakeney, J. H. Maxey, Christy Russell, and Hubert Ambrister, for plaintiffs in error.

W. L. Curtis and R. B. Butts, for defendant in error.

BAILEY, J. This action was instituted in the district court of Sequoyah county by Warren Mooney, as plaintiff, against Pearl Sells and others, as defendants, to recover possession of a certain tract of land, together with rents for the use thereof. The lands involved were allotted to Udine Simpson, a one-fourth blood Cherokee Indian. The plaintiff claimed title under and by virtue of a deed executed by the allottee to him on July 27, 1908.

Defendants' answer denied generally the allegations of plaintiff's petition, and then alleged that the allottee, on the 26th day of November, 1904, for a consideration of $1,000, executed to the mother of the defendants, one Vicey S. Hayes, two warranty deeds conveying the lands here involved, which deeds were never placed of record; that under these deeds Mrs. Hayes took possession, claiming title, and remained in possession until her death, when the property descended to the defendants, who were her heirs at law and devisees; that defendants continuously occupied the same, openly and notoriously, claiming adversely to the allottee and others.

They further admitted the execution of the deed to the plaintiff by the allottee on July 27, 1908, under which plaintiff claimed the lands in question. They alleged that said deed was void for the reason the allottee had not been in possession for more than one year next preceding the execution and delivery thereof, and that the defendants had been in open and notorious possession of said land, claiming title adverse to the allottee, all of which they charge plaintiff knew. To this answer and cross-petition the plaintiff filed his demurrer, which was sustained. The defendants thereupon elected to stand upon their answer and cross-petition, and refused to plead further.

The plaintiff offered evidence as to the rental value of the property, and judgment was thereupon entered by the court in favor of the plaintiff and against the defendants for the possession of the lands, cancellation of deeds as prayed for in plaintiff's petition, and for rents. From which judgment defendants

appealed, and their brief, under the assignments of error, presents two questions:

First. "The court erred in holding that the champerty statute had no application in this case, for the reason the allottee was not a restricted Indian at the time of the making of the deed to plaintiff, and the deed was not made under the regulation and supervision of the Indian Department."

Second. "That the rule of law announced by this court in the case of Miller v. Fryer, 35 Okla. 145, and other cases had become and were rules of property."

In discussing the first proposition, counsel for plaintiffs in error admit that their contention is in conflict with the more recent cases of this court, such as Murrow Indian Orphans Home v. McClendon, 64 Oklahoma, 166 Pac. 1101; Miller v. Grayson, 64 Oklahoma, 166 Pac. 1077; Hammett v. Montgomery, 67 Oklahoma, 170 Pac. 689; Thompson v. Riddle, 69 Oklahoma, 171 Pac. 331, the first of which cases expressly overrules the cases upon which counsel rely; but it is insisted that these last decisions of the court have overlooked the effect of the champerty statute of Oklahoma as it relates to and applies to the sale of lands from which all restrictions are removed and the sale of restricted Indian lands made under the supervision of the governmental agency and according to the rules and regulations of the Indian Department. But we think the rule announced in Murrow Indian Orphans Home v. McClendon, supra, which specifically overrules Miller v. Fryer, supra, and other similar cases, applies with equal force to deeds executed by allottees from whom all restrictions are removed and deeds of allottees executed under the supervision of governmental agencies.

In Thompson v. Riddle et al., 69 Oklahoma, 171 Pac. 331, it is said:

"The purpose and intent of Congress is to make all conveyances and transactions in regard to these restricted lands in contravention of the acts of Congress an absolute nullity, and to protect the rights of the Indian and his lands to the end that when the disabilities of an Indian allottee and the restriction upon alienation are removed, he may hold said lands himself or convey them to others free and unincumbered and in absolute disregard of any transaction he may have consummated during the period of restriction or disability. To hold that the champerty statute applied would diminish the rights of the Indian in the exercise of control and ownership over his lands after the restrictions had been removed. He would be limited to sell only to the person in adverse possession, or to go into court and by action oust the person in adverse possession before he could sell his lands to another.

* * * This would be giving force and effect to these attempted conveyances and transactions which the law denounced as absolute nullities."

We see no reason why the suggestions as above quoted do not apply with equal force to both those who sell with and those who sell without governmental supervision. A deed executed by an allottee of the Five Civilized Tribes before the removal of restrictions is a nullity, and if the person in possession under such deed claiming adversely to the allottee is permitted to acquire rights or advantageous positions by reason of the champerty statute as against the purchaser receiving a deed after the removal of restrictions, such rule will have the effect of in part, at least, validating that which was invalid. We do not understand that such is the intent or policy of the law relating to the disposition of allotted lands.

Relative to the second proposition suggested by plaintiffs in error, we think it is a sufficient answer to suggest that the cases upon which they rely to establish a rule of property, aside from the fact that they have been expressly overruled by the decisions of this court, were not rendered until long after plaintiffs in error had received the conveyance relied upon in this action, and it is difficult to understand how any right or claim could be predicated thereon. McCray v. Miller, 78 Okla. 16, 184 Pac. 781. A further consideration is that, as was said in Gannon v. Johnson, 40 Okla. 695, 140 Pac. 430:

"The doctrine of rule of property cannot be applied to render valid conveyances made in violation of governmental policy."

For the reasons assigned, the judgment of the trial court is affirmed.

RAINEY, C. J., and HARRISON, McNEILL, and JOHNSON, JJ., concur.