## UNITED STATES v. WATASHE et al.
### No. 1743.

Circuit Court of Appeals, Tenth Circuit.
March 13, 1939.

William H. Churchwell, Atty. Dept. of Justice, of Washington, D. C. (Charles E. Collett, Acting Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl., and Oscar A. Provost, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

L. O. Lytle, of Sapulpa, Okl. (John R. Miller, Roy T. Wildman, and James J. Mars, all of Sapulpa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 20, 1924, and October 10, 1925, the lands involved in this suit were purchased for Katie Watashe, a full-blood Creek Indian, with funds derived from royalties reserved in an oil and gas lease on her restricted allotment and held in trust by the Secretary of the Interior. The lands were conveyed to Katie by deeds, the habendum clauses of which contained the following provision:

"That no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

On September 15, 1931, Katie Roubedeaux, formerly Watashe, and John R. Roubedeaux, her husband, undertook to convey such lands to her two children, Mahaley Watashe and George Watashe, reserving in herself a life estate. The Assistant Superintendent of the Five Civilized Tribes undertook to give official approval to the deed from Katie to Mahaley and George. The habendum clause contained the following provision:

"That no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto shall be of any force and effect, unless approved by the Secretary of the Interior or the restrictions from said land are otherwise removed by operation of law."

On August 23, 1933, Mahaley undertook to convey her interest in the lands to Katie. On August 25, 1933, Katie and John Roubedeaux undertook to convey the lands to Mrs. Sam Naifeh. Neither of the last mentioned deeds was approved by the Secretary of the Interior.

On December 2, 1933, Katie brought a suit against George in the district court of Creek County, Oklahoma, numbered 21,136 on the docket of such court, in which she obtained a decree cancelling the deed from her to George. George is a Creek Indian of more than one-half degree Indian blood. Katie did not serve on the Superintendent of the Five Civilized Tribes, notice of the pendency of the suit pursuant to Section 3 of the Act of April 12, 1926, 44 Stat. 240.

The United States brought this suit in its own behalf and behalf of Mahaley and George, minor full-blood unenrolled Creek Indians, against Katie, John R. Roubedeaux, and Mrs. Sam Naifeh, for the cancellation of the deed from Mahaley to Katie, the deed from Katie to Mrs. Sam Naifeh, and the decree rendered in favor of Katie in cause No. 21,136.

The Act of May 27, 1908, 35 Stat. 312, in part reads:

"That * * * the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: * * * All allotted lands of enrolled full-bloods, * * * shall not be subject to alienation * * * or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. * * *

"Sec. 2. * * * Provided, That leases of restricted lands for oil, gas or other mining purposes, * * * may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise * * *."

Section 1 of the Act of May 10, 1928, 45 Stat. 495, in part reads as follows:

"That the restrictions against the alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, be, and they are hereby, extended for an additional period of twenty-five years commencing on April 26, 1931: Provided, That the Secretary of the Interior shall have the authority to remove the restrictions, upon the applications of the Indian owners of the land, and may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

The trial court held that the Act of May 10, 1928, is limited in its application to "lands *allotted to members of the Five Civilized Tribes,*" enrolled as of one-half or more Indian blood, and did not effect an

extension of restrictions in deeds of lands to such members purchased with restricted funds. (Italics ours.)

The Act of May 27, 1908, 35 Stat. 312, conferred upon the Secretary of the Interior the power to "remove such restrictions * * * under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

Pursuant thereto the Secretary by rule prescribed that "where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted land, * * * the superintendent * * * shall cause conveyance of such lands, to be made on form of conveyance containing an habendum clause against alienation or incumbrance until April 26, 1931." The rule further prescribed the form of the habendum clause substantially in the tenor of the habendum clause in the deeds made to Katie on March 20, 1924, and October 10, 1925.

The power of the Secretary of the Interior to make the regulation was upheld in Sunderland v. United States, 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L.Ed. 259. See, also, Mott v. United States, 283 U.S. 747, 751, 51 S.Ct. 642, 75 L.Ed. 1385. In the Sunderland case the court said:

"Since the allotted lands could not be sold or encumbered without his consent, and since the proceeds of any sale thereof were subject to his control and could only be disposed of with his approval and under such rules as he might prescribe for the benefit of the respective Indians, the extension of such control to the property in which the proceeds were directly invested would seem to be within the statute fairly construed. Indeed, we think the authority of the Secretary to withhold his consent to the proposed investment of the proceeds subject to his control, includes the lesser authority to allow the investment upon condition that the property into which the proceeds are converted shall be impressed with a like control." [266 U.S. 226, 45 S.Ct. 65.]

The deed from Katie to Mahaley and George was not approved by the Secretary of the Interior, and the question arises whether an approval by the Assistant Superintendent of the Five Civilized Tribes was sufficient.

Section 17 of the Act of August 1, 1914, 38 Stat. 598, 25 U.S.C.A. § 25, in part reads as follows:

"That, effective September first, nineteen hundred and fourteen, the offices of the Commissioner of the Five Civilized Tribes and superintendent of Union Agency, in Oklahoma, be, and the same are hereby, abolished and in lieu thereof there shall be appointed by the President, by and with the advice and consent of the Senate, a superintendent for the Five Civilized Tribes, with his office located in the State of Oklahoma, at a salary of $5,000 per annum, and said superintendent shall exercise the authority and perform the duties now exercised by the Commissioner to the Five Civilized Tribes and the superintendent of the Union Agency, with authority to reorganize the department and to eliminate all unnecessary clerks, subject to the approval of the Secretary of the Interior."

An examination of the Acts of Congress dealing with the powers and duties of the Commission to the Five Civilized Tribes, commonly called the Dawes Commission, discloses no grant of power to the Commission to approve deeds of conveyance of restricted lands by members of the Five Civilized Tribes.[1] On the contrary, deeds which the Commission was authorized to make required the affirmative approval of the Secretary of the Interior.

We find no statute specifically defining the powers of the Superintendent of the Union Agency. An examination of the many statutes dealing with the powers and duties of superintendents and agents discloses no grant of power to approve deeds of conveyance of restricted lands by members of the Five Civilized Tribes.

---

[1] The Acts of Congress dealing with the powers and duties of the Dawes Commission are:

Act of March 3, 1893, 27 Stat. 612, 645, 646;

Act of June 10, 1896, 29 Stat. 321, 339, 340;

Act of June 7, 1897, 30 Stat. 62, 83, 84;

Act of July 1, 1898, 30 Stat. 571, 591;

Act of May 31, 1900, 31 Stat. 221, 236;

Act of March 3, 1901, 31 Stat. 1058, 1077;

Act of May 27, 1902, 32 Stat. 245, 258;

Act of March 3, 1903, 32 Stat. 982, 994;

Act of April 21, 1904, 33 Stat. 189, 204;

Act of March 3, 1905, 33 Stat. 1048, 1060, 1071;

Act of June 21, 1906, 34 Stat. 325, 340.

Section 7 of the Act of June 30, 1834, 4 Stat. 736, as it appears in R.S.2d Ed., 1878, § 2058, 25 U.S.C.A. § 31, reads as follows:

"Each Indian agent shall, within his agency, manage and superintend the intercourse with the Indians, agreeably to law; and execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the President, the Secretary of the Interior, the Commissioner of Indian Affairs, or the Superintendent of Indian Affairs."

We are advised that neither the Superintendent nor the Assistant Superintendent of the Five Civilized Tribes has been empowered, pursuant to the above section, to approve deeds of conveyance of restricted lands by members of the Five Civilized Tribes.

 Without statutory authority, subordinate officials have no power with respect to the duties of an office involving the exercise of judgment and discretion.[2]

 Section 18 of the Act of February 14, 1920, 41 Stat. 408, 426, 25 U.S.C.A. § 356, expressly provides that undisputed claims to be paid from individual moneys of restricted allottees or their heirs, and uncontested agricultural and mineral leases, excluding oil and gas leases, "heretofore required to be approved under the existing law by the Secretary of the Interior" shall hereafter be paid, approved, rejected, or disapproved by the Superintendent of the Five Civilized Tribes.

This statute clearly indicates that the Congress regarded the power to approve leases and conveyances of restricted lands to have been vested solely in the Secretary of the Interior, and that it purposed to grant that power to the Superintendent of the Five Civilized Tribes only with respect to certain types of leases.

 Section 5 of the Act of May 11, 1938, 52 Stat. 347, 348, 25 U.S.C.A. § 396e, reads as follows:

"The Secretary of the Interior may, in his discretion, authorize superintendents or other officials in the Indian Service to approve leases for oil, gas, or other mining purposes covering any restricted Indian lands, tribal or allotted."

This statute indicates that Congress regarded Congressional authorization necessary in order to permit the Secretary to delegate to superintendents or other officials in the Indian Service the power to approve such leases.

 The Act of April 21, 1904, 33 Stat. 189, 204, in part provides:

"* * * all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

The Act of May 27, 1908, 35 Stat. 312, after prescribing the status of the lands allotted to the Five Civilized Tribes, in part reads:

"* * * The Secretary of the Interior shall not be prohibited by this Act from continuing to remove restrictions as heretofore, * * *." Section 1.

Under the Act of 1904 it is plain that the power of the Indian Agent is limited to investigation and recommendation, and that the final determination with respect to removal of restrictions devolves upon the Secretary of the Interior.[3]

It follows that the deed from Katie to Mahaley and George, lacking the approval of the Secretary of the Interior, was ineffectual, and that Mahaley and George acquired no estate in the lands here involved.

We deem it unnecessary to pass on the scope of the Act of May 10, 1928, 45 Stat. 495.

For the reasons we have indicated, the decree of dismissal was proper.

Affirmed.

[2] Willingham v. State, 21 Fla. 761, 763;

Moore v. Wilson, 84 Kan. 745, 115 P. 548;

Monroe's Guardian v. Monroe, 215 Ky. 440, 285 S.W. 250.

[3] Rogers v. Noel, 34 Okl. 238, 124 P. 976, 977;

Simmons v. Whittington, 27 Okl. 356, 112 P. 1018, 1020;

Murrow Indians Orphans' Home v. McClendon, 64 Okl. 205, 166 P. 1101, 1102.